**Linda Taylor MORGAN, f/k/a Linda H. Ackerman, Petitioner/Respondent/ Cross–Appellant,**

v.

**Stephen M. ACKERMAN, Respondent/Appellant/ Cross–Respondent.**

**Nos. 69959, 70058.**

Missouri Court of Appeals, Eastern District, Division Two.

March 17, 1998

David B. Lacks, Leigh Joy Carson, St. Louis, for appellant.

Linda Taylor Morgan, St. Louis, pro se.

RHODES RUSSELL, Judge.

Stephen Ackerman ("Husband") and Linda Taylor Morgan ("Wife") both appeal portions of the trial court's judgment dissolving their marriage. Husband appeals the provisions relating to division of property, child support, maintenance, attorney's fees, and a requirement he make annual accountings of assets he holds for the children. Mother appeals the finding that Ackerman Manufacturing Co., of which Husband was the sole shareholder, was Husband's separate property. We affirm in part and reverse and remand in part.

Husband and Wife were married on June 19, 1976, and lived together until they separated in September 1990. There were three children of the marriage: Robert Stephen, Elizabeth Morgan, and Andrew Moog. Throughout the marriage, a family-owned mattress business, Ackerman Manufacturing Co., provided the livelihood for the family.

On September 26, 1990, Wife filed a petition seeking dissolution of the marriage. The court appointed a guardian ad litem for the children. The parties subsequently reached, and the trial court entered a custody agreement granting Wife custody of the minor children on January 30, 1992. The cause was tried on fifteen days between May 1992 and April 1993. On October 21, 1993, the parties completed filing proposed findings of fact and conclusions of law. Thirty months after the close of evidence, on Octo-

ber 16, 1995, the trial court entered its judgment and decree of dissolution including findings of fact, conclusions of law, and other judgments and orders. The trial court's final amendment to the decree and disposition of other post-trial motions was entered on February 2, 1996. Husband and Wife both appealed.

We must affirm the trial court's decree unless there is no substantial evidence to support the decision, it is against the weight of the evidence, or it erroneously declares or applies the law. *In re Marriage of Burns,* 903 S.W.2d 648, 650 (Mo.App.1995); *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). In addition, we defer to the trial court's determination of credibility, viewing the evidence and inferences therefrom in the light most favorable to the decree and disregarding all contrary evidence and inferences. *Burns,* 903 S.W.2d at 650.

Husband's first three points challenge the trial court's distribution of property and awards of child support and maintenance. Husband argues these awards, granted in the dissolution decree dated October 16, 1995, were erroneous because they were based on evidence that was stale.

The evidence in this case was adduced between May 1992 and April 1993. Approximately six months later, in October 1993, the parties completed filing their proposed findings of fact and conclusions of law and other post-trial motions. When the trial court entered the dissolution decree, some thirty months had passed since the last evidence was taken.

The trial court's judgment set aside to the parties their non-marital property. The court determined that an equitable distribution of the marital property was in the proportion of 70% to Wife and 30% to Husband, and distributed the marital property accordingly. The court found that application of the Form 14 child support amount would be unjust and inappropriate. The court ordered Husband to pay $1600 per month for each of the two minor children, and ordered him to provide the children medical insurance and to pay 65% of the children's educational ex-

penses. The court further ordered Husband to pay Wife maintenance of $3000 per month.

Husband maintains that *In re Marriage of Gustin,* 861 S.W.2d 639 (Mo.App.1993), demands another hearing to determine the parties' economic circumstances at the time the division of property becomes effective. We agree. In *Gustin,* the trial court entered judgment eight months after accepting the valuation of marital property as calculated by the husband's CPA. On appeal, the Western District held that the eight month gap between the valuation and the decree becoming effective, dictated reversal of the division of property. The case was remanded for the trial court to receive evidence of the property's value and to consider the economic circumstances of the parties at the time the division of property was to become effective.

The *Gustin* court noted that in *Taylor v. Taylor,* 736 S.W.2d 388, 391 (Mo. banc 1987), the Supreme Court determined that the proper date of valuation of marital property is the date of trial. *Gustin,* 861 S.W.2d at 643. Section 452.330.1(1), RSMo 1994,[1] however, mandates that the trial court must consider the economic circumstances of each spouse at the time the division of property is to become effective. The court, however, harmonized these directives, explaining:

> These two concepts are not inconsistent. Valuation of property should be reasonably proximate to the date the division is to be effective. If the effective date of distribution is not reasonably proximate to the date of valuation, the court should hold another hearing to establish a valuation as close to the effective date of the division as possible.

*Gustin,* 861 S.W.2d at 644.

In *In re Marriage of Burns,* this court was faced with a case in which, in a previous appeal, we had vacated the dissolution decree and remanded the case for further proceedings. The vacation of the decree of dissolution therein also vacated the property division. On remand, after finding the marriage was irretrievably broken, the court proceeded to divide the marital property based on the evidence taken in the original hearing 16

1. All statutory references hereinafter are to RSMo 1994 unless otherwise indicated.

months prior. We reversed and explained that the trial court should have considered the evidence of the parties' economic circumstances at the time of judgment after remand, when the marriage was actually dissolved. Its failure to do so was error. *Burns,* 903 S.W.2d at 652.

■ The effective date of distribution herein was some 30 to 40 months after the evidence valuing the property was received. "It cannot be said that distributions based upon stale valuations are based on value, for value is by no means a constant." *Gustin,* 861 S.W.2d at 643 (quoting *Sutliff v. Sutliff,* 518 Pa. 378, 543 A.2d 534, 537 (1988)). Market conditions and changing economic circumstances can render assets that had been valuable months or years earlier virtually worthless in the present, and vice versa. *Id.* To distribute property without regard to those fluctuations would be illogical. *Id.*

■ The marital and separate property herein included, *inter alia,* real estate, automobiles, bank accounts, and shares in Husband's closely-held corporation, all of which could have changed value significantly within the 30 months the case was under submission. The date of valuation herein is not reasonably proximate to the effective date of distribution. We reverse all judgments regarding the distribution of property and remand for the trial court to receive evidence of the value of the property and to consider the current economic circumstances of each spouse.

■ In addition to the division of property, Husband also appeals the judgments ordering him to pay child support and maintenance based on the evidence taken at least 30 months prior. We find, as the *Gustin* court did, that the awards of child support and maintenance should be reversed in order to allow the court on remand a full range of options in dividing the property. *See Gustin,* 861 S.W.2d at 645. The child support and maintenance awards must be recalculated when the court divides the property on remand, because the amount of property apportioned to Wife is considered in setting the amount of child support and maintenance, if any, awarded to her. Further, child support and maintenance awards also require consideration of current economic circumstances, therefore the child support and maintenance awards must be reversed. However, on remand the court is ordered to continue the present child support and maintenance awards in effect until a final judgment is entered. In establishing a final award, the court may consider the term during which the present award was in effect and make any appropriate adjustments.

The remainder of Husband's points on appeal are associated with the distribution of property and child support and maintenance awards. Due to our reversal and remand of those provisions, portions of the balance of Husband's appeal may be moot. However, we will address his points as these issues might arise on remand.

■ In his fourth point, Husband asserts that the trial court erred in providing for an automatic biennial change in the amount of child support based on changes in the cost of living. Husband argues that such an automatic change provision violates section 452.370.1's requirement that a substantial and continuing change of circumstances must occur as a prerequisite to modification of a dissolution decree. We agree.

Section 452.370.1 provides that "the provisions of any decree respecting maintenance or support may be modified only upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable." The decree herein states, at paragraph 240, "the Court concludes that the child support ordered herein shall contain a cost of living increase or decrease every two years based on a cost of living index with a base of June 30, 1995." The trial court's order does not require any showing of changed circumstances as a condition to adjustment in accordance with section 452.370.1.

■ While the trial court would be obliged under section 452.325.4(1) to enforce such a provision if it were included in a settlement agreement, the court may not award a cost-of-living adjustment of its own volition. *Desloge v. Desloge,* 617 S.W.2d 486, 489 (Mo.App. 1981). Inflation and aging of the children

with a resultant increase in costs should be considered by the trial court in establishing the original support award. *Walck v. Walck,* 651 S.W.2d 559, 560–61 (Mo.App.1983); *Raines v. Raines,* 583 S.W.2d 564, 568 (Mo. App.1979).

On remand, the trial court should strike paragraph 240 from the decree. In awarding child support, the trial court should consider any possible inflation and the inevitable aging of the children so that modifications will not need to be made soon after the award or frequently thereafter. *Raines,* 583 S.W.2d at 568.

In point five, Husband contends that the trial court erred in attributing to him the assets and income of Ackerman Manufacturing Co. in its determination of the distribution of marital property, child support, maintenance, and attorney's fees. Husband maintains that the trial court's piercing of the corporate veil was improper because there was no evidence indicating that the company was used to defeat public convenience, to justify a wrong, or to perpetrate fraud.

The trial court found that Ackerman Manufacturing Co. is a closely-held corporation owned 100% by Husband. The court further found that Husband has total control of all policies of the company, including the amount and method of his compensation. The trial court stated that throughout the parties' marriage, Husband used the company assets to satisfy personal financial obligations for himself, Wife, and their children, such that the family's standard of living was directly supported, in part, by Ackerman Manufacturing Co. The court found that since the parties' separation, Husband has used his business judgment for the financial betterment of Ackerman Manufacturing Co. and the financial detriment of his family. The dissolution decree stated that "[t]he manner in which he used the company's financial structure in disregard of tax consequences indicates [Husband's] willingness to disregard the corporate status of Ackerman Manufacturing Company." The trial court concluded that Ackerman Manufacturing Co. was Husband's alter ego such that funds available to the corporation were available to

Husband for the purposes of determining child support, maintenance, ability to pay attorney's fees, and the equitable distribution of marital property.

■ Ordinarily, a corporation is regarded as a separate entity, distinct from the members who compose it. *Krajcovic v. Krajcovic,* 693 S.W.2d 884, 886 (Mo.App.1985). Husband, relying on *Krajcovic,* insists that the corporate entity will be disregarded only when it appears the corporation is controlled and influenced by one or a few persons *and in addition,* that the corporate cloak is utilized as a subterfuge to defeat public convenience, to justify wrong, or to perpetrate fraud. *See Krajcovic,* 693 S.W.2d at 886–87.

Husband's argument overlooks the facts in *Krajcovic* and the remainder of this court's discussion therein. In *Krajcovic,* the husband owned 100% of the corporation, was the president, and had complete control over the corporation. We explained that under the alter ego or instrumentality rule, when a corporation comes under the domination of a person such as to have it become a mere instrument of that person, and is really indistinct from the person controlling it, then the corporate form will be disregarded, if to retain it would result in injustice. *Krajcovic,* 693 S.W.2d at 887.

The trial court herein specifically found that Ackerman Manufacturing Co. was the alter ego of Husband. Husband has disregarded the company's corporate status throughout the marriage. It would work an injustice on Wife to allow the company's corporate status to prevent the court from consideration of funds available to Husband in determining Husband's financial obligations. "It would be wrong to let the corporate veil stand to disregard the corporate income as part of husband's obligation." *Krajcovic,* 693 S.W.2d at 887.

The facts of *Boudreau v. Benitz,* 827 S.W.2d 732 (Mo.App.1992), closely parallel the case at bar. In *Boudreau,* the husband owned, with his new wife, 100% of a closely-held corporation. The trial court therein found that all corporate decisions were made by husband and wife, and that the corporation was merely a veil. The court also found

that the husband used the corporation to pay for and provide various personal expenses which he would otherwise have had to draw a salary, pay tax on the salary, and purchase the same benefits with post-tax dollars. On appeal, the *Boudreau* court held that the trial court did not err in piercing the corporate veil and attributing to the husband corporate funds such as retained earnings and shareholder loans. *Boudreau*, 827 S.W.2d at 734.

■ The trial court's findings herein are nearly identical in content to those in *Boudreau*. We find that the trial court did not err in considering Ackerman Manufacturing Co.'s funds when determining appropriate child support, appropriate maintenance, ability to pay attorney's fees, and the equitable division of marital property. On remand, when dividing the property and determining child support and maintenance obligations, the trial court may attribute to Husband funds available to Ackerman Manufacturing Co. Point denied.

Husband next asserts that the trial court's order requiring him to pay the minor children's various educational expenses was so broad and vague as to render it unenforceable.

■ Generally, a judgment must be definite and certain to be enforceable. *De-Capo v. DeCapo*, 915 S.W.2d 343, 347 (Mo. App.1996). A support provision is sufficiently definite in amount if the provision contains criteria from which a court could, upon a hearing, ministerially determine the obligations of the parties. *Id.* Here, it can easily be determined what costs Husband was obligated to pay.

In *Echele v. Echele*, 782 S.W.2d 430, 437 (Mo.App.1989) this court established guidelines for the trial court to draft a sufficiently definite and enforceable order pertaining to educational expenses. The dissolution decree, as amended, required Husband to pay a percentage of the children's educational expenses, and defined what items were included. The order follows closely the example we offered in *Echele*. We find it difficult to imagine how the trial judge could have been more specific.

Husband asks us to set aside this provision rather than "sentence" him to "unimaginable time and attorney's fees to defend himself in this arena." Practically, a court is not required to foresee the exact amount of educational expenses a child will incur in the future. The cases finding a support order regarding educational expenses so vague as to be unenforceable involved decrees which provided one or both parents shall pay the "costs" or "tuition" of the child or children's education. *See e.g., Monsees v. Monsees*, 908 S.W.2d 812 (Mo.App.1995); *Gable v. Gable*, 816 S.W.2d 287 (Mo.App.1991); *Hahn v. Hahn*, 785 S.W.2d 756 (Mo.App.1990); *Echele v. Echele*, 782 S.W.2d 430 (Mo.App. 1989). Those courts held such orders, which did not set forth any limiting criteria as to costs at a specific school, college, or university, and did not define whether "costs" included tuition, books, room and board, travel, and other items, were too vague. The order, herein, however, following *Echele*'s example, did refer to a particular private high school as well as a particular university. In addition, the decree specifically established that costs will include items such as books, room and board, field trips, computer equipment and supplies, and such detailed items as school photos, play tickets, gym uniforms, parking fees, and yearbooks.

■ Husband's real objection appears to be that the trial court included such items rather than limiting his obligation to a percentage of tuition and room and board only. The amount of support, however, was within the trial court's discretion. The judgment is supported by substantial evidence regarding the children's standard of living during the marriage, and we cannot say that the trial court abused its discretion. The point is denied.

In his final point, Husband argues that the trial court erred in requiring him to provide the guardian ad litem with an accounting of assets which he holds for the benefit of the children. Paragraph 354 of the dissolution decree, as amended, provided:

Further, [Husband] shall prepare an accounting tracing the source of funds and the expenditure of the funds from Septem-

ber 1, 1990, and shall provide said accounting to the Guardian Ad Litem, William P. Grant, no later than April 1, 1996. An annual accounting shall similarly be provided to William P. Grant on April 1st of every year, so long as [Husband] is the Trustee of such accounts. All taxes on said funds shall be paid from said funds.

Husband contends that the trial court has no authority to issue such an order as he can find no specific provision within Chapter 452 granting such power. While we disagree with Husband's reasoning, we do agree that this provision exceeds the trial court's jurisdiction, and we order the trial court on remand to strike the provision.

■■■ In order for the guardian ad litem to perform his duties, he must be given access to the information necessary to protect the children's interest. The court herein was, due to Husband's failure to provide information, unable to ascertain the status of the custodial accounts which were set off to the children. The decree stated that Husband failed to produce documentation explaining the origin or growth of the accounts, failed to produce complete tax records for the accounts, and failed to produce corporate records to verify payment of Ackerman Manufacturing Co.'s IOU's to the children. In addition, the court found that Husband "intentionally and inappropriately failed to release" funds from the accounts to the children. This failure required the involvement of the guardian ad litem and an order by the court to obtain the funds needed for the oldest child's college expenses. The trial court had authority to require Husband to account to the guardian ad litem for the history and current status of the custodial accounts.

However, the trial court did not have the authority to require him to provide annual accountings after a final judgment was entered. The guardian ad litem's authority is derived from the trial court. The guardian ad litem retains his or her powers only as long as the trial court retains jurisdiction over the case. Under Rule 81.05, the trial court retained jurisdiction for ninety days from the date of Husband's filing of the motion for new trial on November 7, 1995.

The trial court did not, however, retain jurisdiction indefinitely. Because the authority of the guardian ad litem is limited by the court's jurisdiction, paragraph 354, providing for an annual accounting as long as Husband remains trustee of the custodial accounts, cannot survive.

On remand, we direct the trial court to strike paragraph 354 of the dissolution decree regarding accountings. However, we realize that evidence of the current values of the assets are necessary for the court to make its determinations in regards to child support and property division. Husband shall be required to produce at retrial the history and current accounting of all assets he holds for the children.

Wife's only point on appeal asserts that the trial court erred in finding that Ackerman Manufacturing Co. was Husband's separate property rather than marital property.

■■■ Section 452.330.2 defines "marital property" as "all property acquired by either spouse subsequent to the marriage," unless it is listed in the enumerated exceptions. In *Hoffmann v. Hoffmann*, 676 S.W.2d 817, 825 (Mo. banc 1984), the Supreme Court adopted the source of funds rule to determine the character of property as marital or separate. Under *Hoffmann*, the increase in value of separate property can constitute marital property if marital assets or labor contributed to "acquiring" that increase. *Hoffmann*, 676 S.W.2d at 825.

There is no dispute that Husband owned 11% of the stock in Ackerman Manufacturing Co. prior to the marriage, and that the value of those shares is separate property. At issue here is whether marital assets contributed to Husband's acquisition of the remaining 89% of Ackerman Manufacturing Co.'s stock and to the increase in value of the corporation.

■■■ The trial court found that the 81 shares Husband received during the marriage were gifts from his father. These shares are, therefore, Husband's separate property. Section 452.330.2(1).

Wife maintains that under *Hoffmann*, and subsequently enacted section 452.330.2(5),

the increase in value of Husband's interest in Ackerman Manufacturing Co. is marital property because marital assets contributed to the increase.

▮ Entitlement of one spouse to a proportionate share of the increase in the value of the other spouse's separate property requires proof of: (a) a contribution of substantial services; (b) a direct correlation between those services and the increase in value; (c) the amount of the increase in value; (d) performance of the services during the marriage; and (e) the value of the services, lack of compensation, or inadequate compensation. *Watkins v. Watkins,* 924 S.W.2d 542, 545 (Mo.App.1996). Wife has failed to prove the final factor. She has not shown the value of her services to the corporation, that Husband was not compensated for his services, nor that Husband received inadequate compensation.

Husband does not dispute that the increase in the value of Ackerman Manufacturing Co. during the marriage was due, at least in part, to his labor. There was no evidence, however, showing that he was not adequately compensated for those services. In fact, the evidence was that Husband received a salary as well as bonuses and other benefits including payment by the corporation of many personal expenses.

▮ Wife argues that she contributed her labor to the company as well, and was not compensated therefor. The trial court found that throughout the marriage, Wife performed "various minor uncompensated tasks," usually of a social nature, on behalf of the company in addition to maintaining her role as a full-time mother and homemaker. The performance of usual spousal duties is not such a substantial contribution of effort as to cause an increase in the value of separate property to transform it to marital property. *Schneider v. Schneider,* 824 S.W.2d 942, 946 (Mo.App.1992). The value of Wife's services did not constitute more than occasional social tasks and did not exceed the level of usual spousal duties. She has, therefore, failed to show her entitlement to a share of the increase in value of Ackerman Manufacturing Co. Wife's point is denied.

We reverse all judgments regarding the distribution of property, child support, and maintenance. The case is remanded to the trial court for redetermination of the division of marital property and the child support and maintenance awards. On remand, the trial court is ordered to continue the present child support and maintenance awards until a final judgment is entered. In determining the division of property, child support, and maintenance, the trial court is directed to receive new evidence on the value of the property and to consider the current economic circumstances of the parties at the time of rehearing. We direct the trial court, on remand, to modify paragraph 354 of the dissolution decree by deleting the second sentence, and establishing a deadline within 30 days of remand for the accounting required in the first sentence of the paragraph. In all other respects, the judgment is affirmed.

CRANE, P.J., and RICHARD B. TEITELMAN, J., concur.