**Mary L. CREECH, Appellant,**

v.

**Thomas E. CREECH, Respondent.**

No. 73610.

Missouri Court of Appeals, Eastern District, Division Two.

March 30, 1999.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 5, 1999.

Application to Transfer Denied June 29, 1999.

Darin D. Inglish, Greg L. Roberts, Chesterfield, Alan J. Agathen, Clayton, for appellant.

Francis L. Keeney, III, Witzel, Kearns, Kenney & Dimmitt, St. Louis, for respondent.

RICHARD B. TEITELMAN, Judge.

Mary L. Creech (hereinafter, "Wife") appeals from the Judgment entered on November 24, 1997, in the Circuit Court of St. Louis County dissolving the marriage of Wife and Thomas E. Creech (hereinafter, "Husband"). Wife raises three issues, including whether the court properly set the award of maintenance to Wife at $1,000, whether the court properly valued the business that Husband owned, and whether the amount awarded to Wife for her attorneys' fees was sufficient. We affirm in part and reverse and remand in part.

*Factual and Procedural Background*

The undisputed facts are as follows:

Husband and Wife were married on August 2, 1974, and had three children during the course of their marriage, Shannon, Ryan and Katie. Husband and Wife separated on June 14, 1996, and testimony was heard by the trial court in the dissolution proceeding in June of 1997. At the time of the hearing, Shannon and Ryan were attending college away from home and Katie, then 12, lived with Husband.

Husband works for a business known as "Electrical Accessories." Husband owns 55% of the business and earns a salary between $120,000 and $150,000 per year. Electrical Associates also provides Husband with insurance and a new leased vehicle, and pays for gas and maintenance on the vehicle. Prior to the dissolution, Husband and Wife jointly owned one-half of the property on which the business was located. That ownership interest produced a monthly net income of $842 to Husband.

Wife did not work steadily during the marriage and her salary was secondary to Husband's salary. Wife obtained her Associates Degree in nursing in 1981 and shortly thereafter went to work for a hospital part-time. In February of 1993, at the suggestion of a supervisor and because she was having trouble functioning both physically and emotionally and believed that she was becoming a danger to her patients, Wife went on a six-month leave of absence.

Though Wife received treatment during her leave of absence, when the six-month period ended, Wife was still unstable and was suicidal. She took an additional six-months' leave, which was unpaid. Following her second leave, there were few nursing openings in low-stress positions with comparable pay, so Wife and Husband decided that Wife would not go back to work but would enroll at St. Louis University in September of 1994 to pursue a Bachelor of Science degree with a major in psychology. At the time of the hearing, she was scheduled to receive her degree in the summer of 1997 and planned to enroll full-time in the fall of 1997 to pursue a Masters Degree in social work.

In May of 1997, the only work she had was as a part-time research assistant at St. Louis University, for which she was paid $660 per month. That work was to continue until August of 1997.

Wife had extensive emotional problems commencing in 1991 and continuing to the time of the hearing. Wife was first treated for memory loss, forgetfulness, and general functioning difficulty. During the course of the marriage she was also treat-

ed for depression, was hospitalized twice for psychiatric problems and attempted suicide in March of 1996.

Wife began seeing Philip Popejoy, Ph. D., weekly in April of 1997. Dr. Popejoy testified at the hearing that Wife has a difficult time concentrating and that she is "aphasic," a situation in which the mind "is not keeping up with the time." Dr. Pope-joy testified that Wife suffers agitation and inability to concentrate, that she is very easily frightened, and that she is extreme-ly self-critical. Dr. Popejoy diagnosed her with Acute Stress Disorder. He testified that while Wife is able to perform well in school,[1] any full-time employment could re-sult in Wife again being hospitalized be-cause 8 hours of stress in one block would be too much for her to handle.

The trial court entered a Decree of Dis-solution on July 30, 1997, and entered an Amended Decree on November 24, 1997. The court found that Wife lacks sufficient property, including marital property ap-portioned to her, to provide for her reason-able needs, and that she is unable at this time to support herself through appropri-ate employment. It found that Husband is of adequate means to support himself and to provide support for Wife and ordered Husband to pay maintenance to Wife in the amount of $1,000 per month commenc-ing August 1, 1997, when Wife's part-time job was to terminate.

Husband and Wife had disputed the val-uation of Husband's business. Wife's ex-pert on business appraisal testified that Husband's 55% of the business was worth $295,000. Husband's expert appraised the interest in the business at $100,500. For purposes of dividing the marital property, the trial court valued Husband's interest in the business at $125,000.

Husband was granted custody of the couple's three children. The trial court found that it would be unjust or inappro-priate for Wife to pay child support to Husband because she earns a minimal in-come. The trial court divided the marital property into roughly equal portions, and ordered Husband to pay $5,000 of Wife's attorneys' fees.

Wife appeals the trial court's judgment, arguing that the trial court erred in (1) awarding insufficient maintenance to meet her needs; (2) incorrectly valuing Hus-band's 55% ownership in Electrical Associ-ates; and (3) awarding an insufficient amount for her attorneys' fees.

*Discussion*

■■■ The judgment of the trial court must be affirmed unless there is no sub-stantial evidence to support it, unless it is against the weight of the evidence, or un-less it erroneously declares or applies the law. *Mehra v. Mehra*, 819 S.W.2d 351, 353 (Mo. banc 1991). We defer to the trial court's determination of credibility, view-ing the evidence and inferences therefrom in the light most favorable to the decree and disregarding all contrary evidence and inferences. *In re Marriage of Burns*, 903 S.W.2d 648, 650 (Mo.App. E.D.1995). An award of maintenance is a matter resting within the sound discretion of the trial court and review of a maintenance award is limited to a determination of abuse of discretion by the trial court. *Holmes v. Holmes*, 878 S.W.2d 906, 910 (Mo.App. E.D.1994).

I

Wife first argues that the trial court erred in awarding only $1,000 per month in maintenance. We agree.

■■■ The purpose of maintenance is to assist a spouse who is unable to be self-supporting through appropriate employ-

---

1. Though Husband argues that Wife's ability to earn good grades in school is indicative of her ability to work, it should be noted that Wife received assistance from the university that enabled her to improve her performance.

Wife not only took her exams in isolation and was given time-and-a-half, but she also was allowed to turn projects in late when neces-sary. Dr. Popejoy and Wife testified that Wife finds school less stressful than work.

ment. *Schoolcraft v. Schoolcraft,* 869 S.W.2d 907, 909 (Mo.App. E.D.1994). Before maintenance may be awarded, a trial court must find that the spouse seeking such an award (1) lacks sufficient property, including marital property granted to him, to provide for his reasonable needs; and (2) is unable to support himself through appropriate employment. See Section 452.335.1(1), (2), RSMo 1994; *McMullin v. McMullin,* 926 S.W.2d 108, 111 (Mo.App. E.D.1996). If we determine that the trial court abused its discretion, we are obligated to enter the proper judgment. *In re Marriage of Myers,* 879 S.W.2d 736, 736 (Mo.App. S.D.1994). A change in the amount of maintenance should be made as of the effective date of the judgment in the trial court. *Id*

■ Upon review of the entire record, we find that the trial court awarded an inadequate amount of maintenance to Wife. At the time of the hearing, the undisputed amount of Wife's estimated monthly expenses totaled approximately $3,660, including $1,413 for tuition and books. Wife's monthly income included $660 from her part-time job as a research assistant that would end in mid-August of 1997, and an estimated $582 per month from income-producing property. Though the trial court found that Wife is unable to support herself through appropriate employment, that Wife earns a "minimal income," and that Husband is of adequate means to support himself and to provide support for Wife, the trial court only awarded $1,000 to Wife in monthly maintenance, leaving a shortfall of $2078.[2] This was an abuse of discretion.

We therefore modify the judgment to increase the award of maintenance to Wife to $2,500 per month with no fixed termination, to be modifiable according to law. The increased maintenance shall be effective as of August 1, 1997, the date the trial court set for the payment of maintenance to begin.

2. As of August of 1997, Wife's only sources of income were the estimated $582 per month from income-producing property and the

## II

■ Wife next argues that the trial court erred in valuing Husband's 55% share of the Electrical Associates at $125,-000.

Wife's expert, Frank Reedy Jr., a CPA and Certified Valuing Analyst, used a hybrid of valuation methods to conclude that Husband's interest in the business was worth $295,000. Husband's expert, Richard Wolff, also a CPA, used the average of three valuation methods to calculate that Husband's interest was worth $100,500. The trial court found that Husband's interest was worth $125,000.

■ "The trial court is entitled to believe or disbelieve testimony, including expert testimony, of either party concerning property valuations." *Kahn v. Kahn* 839 S.W.2d 327, 336 (Mo.App. E.D.1992), citing *In re Marriage of Gourley,* 811 S.W.2d 13, 20 (Mo.App. S.D.1991). When, as here, the trial court's determination of value is within the range of evidence, we will not find that determination erroneous or weigh the evidence. *Kahn v. Kahn* 839 S.W.2d at 336. Point denied.

## III

Wife argues in her final point that the trial court erred in awarding her $5,000 in attorneys' fees because that amount does not represent a fair allocation of the burden of prosecuting a lawsuit in light of the parties' respective financial positions.

■ An attorney fee award is within the broad discretion of the trial court. *Mehra v. Mehra,* 819 S.W.2d at 356–57; *Rich v. Rich,* 871 S.W.2d 618, 627 (Mo. App. E.D.1994). The trial court's ruling with respect to the distribution of attorneys' fees is presumptively correct. *Cohn v. Cohn,* 841 S.W.2d 782, 787 (Mo.App. E.D.1992). We will reverse such an award only if the trial court manifestly abused its discretion. *Rich v. Rich,* 871 S.W.2d at 627.

maintenance amount. Husband did not dispute that Wife's claimed expenses of $3,660 were reasonable.

In the case at bar, Wife's attorneys' fees are in excess of $29,000 and Husband's attorneys' fees, expert's fees, and deposition and court costs totaled approximately $15,148. Wife's attorney had already been paid $15,000, and the trial court ordered Husband to pay an additional $5,000. Though Wife argues that her income will not allow her to pay her attorneys' fees, the record indicates that the couple's substantial marital property was divided evenly and that Wife is to receive 50% of the proceeds remaining from the sale of the marital residence, $90,500, presumptively in cash. Viewing these facts together, we find that the trial court did not abuse its discretion in awarding to Wife $5,000 for her attorneys' fees. Point denied.

### Conclusion

We modify the judgment to increase the award of maintenance to Wife to $2,500 per month. In all other respects the judgment is affirmed.

Presiding Judge JAMES R. DOWD and Judge LAWRENCE G. CRAHAN concur.