Barbara CRAIG–GARNER, Petitioner–Respondent,

v.

Larry GARNER, Respondent–Appellant.

No. ED 78947.

Missouri Court of Appeals, Eastern District, Division Four.

May 28, 2002.

Lawrence G. Gillespie, Clayton, MO, for appellant.

David R. Bohm, Barbara Blee Maille, St. Charles, MO, for respondent.

LAWRENCE E. MOONEY, Judge.

Larry Garner, Husband, appeals the trial court's judgment dissolving his marriage to Barbara Craig–Garner, Wife. Husband argues that the trial court erred in: (1) determining the value of the marital interest in Garman Company, Inc.; (2) awarding Wife $750 per month as modifiable maintenance; and (3) ordering him to pay a portion of Wife's attorney's fees. We affirm the awards of maintenance and attorney's fees, but reverse and remand the division of marital property for further proceedings.

## BACKGROUND

Husband and Wife were married on September 11, 1996, and lived together until they separated nearly two years later, in August of 1998. Wife later filed her petition for dissolution in November of 1998. The judgment of dissolution from which Husband now appeals was entered on November 11, 2000.

The court's judgment, in pertinent part, awarded Wife modifiable maintenance of $750 per month and ordered Husband to pay a portion of Wife's attorney's fees in the amount of $25,000. The court also set aside to the parties their separate property and divided marital property, ordering Husband to pay $131,178.47 to Wife.

## DISCUSSION

Our review is governed by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

Thus, we will affirm the trial court's order unless there is no substantial evidence to support the decision, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.* Moreover, we view the evidence and permissible inferences therefrom in the light most favorable to the trial court's decision and disregard all contrary evidence and inferences. *Chen v. Li*, 986 S.W.2d 927, 931 (Mo.App. E.D.1999).

*Point 1: Calculation of Marital Property*

Husband's first point challenges the calculation of Husband's marital interest in Garman Company, Inc. The court found that the value of Husband's marital interest in Garman consisted of Husband's marital shares in Garman, valued at $40,550, plus the additional contribution of Husband's share of the retained earnings reinvested in the company during the marriage, $171,467. Husband contends the court erred in its determination of value.[1]

Husband is employed by Garman Company, Inc., a closely-held, Subchapter S family corporation. Husband is also a shareholder of Garman, along with his father, brother, and sister. At the time Husband and Wife married, Husband owned 25% of the outstanding shares in Garman. Husband purchased his stock before the marriage, in 1993. At that time, Husband paid a portion of the purchase price and signed a promissory note for the remaining amount due. It is uncontested that 40% of the principal amount paid for the stock in Garman was paid during the marriage.

---

1. Husband also alleges there was insufficient evidence to support the court's findings because Exhibit 28, which consisted of various summaries of calculations prepared by Wife's expert, was not admitted into evidence. The record shows that this exhibit, while relied on extensively by Wife's expert during his testi- mony, was not admitted into evidence. However, during oral arguments, Husband abandoned his objection and conceded that this exhibit could be considered by this court. Accordingly, Husband's motion to strike portions of Wife's brief that reference Exhibit 28 is denied as moot.

On this significant issue of the value of Husband's marital interest in Garman, Husband presented no expert to testify, but rather testified himself regarding the value of his stock in Garman. On the other hand, Wife presented a certified public accountant to testify to the valuation of Husband's marital interest in Garman. Though acknowledging that Husband, as an owner of Garman, was authorized to testify to his valuation of the business, the court expressly found that the accountant presented the more credible evidence as to the valuation of Husband's interests, and based its findings on the accountant's testimony.

In valuing Husband's marital interest in Garman, the accountant used a book-value methodology. He testified that this was one of several commonly accepted methodologies for valuing interest in a company, and that this method would produce a more conservative value. In the accountant's opinion, the value of Husband's marital interest in Garman consisted of the value of the marital portion of Husband's shares in Garman, $45,416, plus the amount of income earned by Husband during the marriage and reinvested in Garman, instead of being distributed to him, totaling $171,467. A detailed description of how accountant arrived at these values would serve little purpose. However, we do note that the value of the marital portion of Husband's shares was calculated by accountant, and the court, based upon the book value of Garman as of December 1996.[2]

■ "Valuation of the stock of a closely held corporation is a difficult matter." *Thill v. Thill*, 26 S.W.3d 199, 203 (Mo.App. W.D.2000). The purpose of any valuation of a business in a dissolution proceeding is to determine the fair market value so that the court may apply equitable distribution rules and arrive at a fair property division. *Id.* We acknowledge that we are by no means experts in the matters of valuation, that value is a determination of fact and thus we will give great deference to the trial court. *See Thill*, 26 S.W.3d at 203. However, it is widely held that valuation of property should be reasonably proximate to the date the division of property is to be effective. *In re Marriage of Below*, 8 S.W.3d 233, 236 (Mo.App. E.D.1999); *Morgan v. Ackerman*, 964 S.W.2d 865, 869 (Mo.App. E.D.1998). "It cannot be said that distributions based upon stale valuations are based on value, for value is by no means a constant." *Morgan*, 964 S.W.2d at 869. "Market conditions and changing economic circumstances can render assets that had been valuable months or years earlier virtually worthless in the present, and vice versa." *Id.* To distribute property without accounting for these fluctuations is not only illogical, but in error. *See Morgan*, 964 S.W.2d at 869.

■ Here, the court based its findings and distribution of property on a valuation of Garman from 1996—nearly four years prior to the date of dissolution. The date of valuation of Husband's marital shares is not reasonably proximate to the date of division, and thus the court erroneously applied the law in its calculation and distribution of marital property. The court's calculations are necessarily flawed because they reflect a book value of Garman at the beginning of the marriage, not when the marital property was to be divided. Such calculations fail to reflect changes on the books—such as appreciation and deprecia-

2. The difference between accountant's calculation of the value of Husband's marital shares in Garman ($45,416), and the court's calculation ($40,550), is explained by the fact that accountant believed 44.8% of Husband's stock was paid for during the marriage, while the court determined the correct percentage to be 40%.

tion of assets or changes in liabilities that may be necessary to establish book value—and fails to provide the court with the book value of the Husband's marital interest in Garman at the time of division.[3] Accordingly, we reverse and remand for the trial court to receive additional evidence of the value of Husband's marital interest in Garman, to value such interest reasonably proximate to the date the division of property is to be effective, and to equitably divide the marital property.

Additionally, the court found that Husband's share of the retained earnings reinvested in the company during the marriage ($171,467) was marital property. Generally, retained earnings of a corporation do not constitute marital property. *Hoffmann v. Hoffmann*, 676 S.W.2d 817, 827 (Mo. banc 1984).[4] Retained earnings and profits of a corporation are a corporate asset and remain the corporation's property until severed from other corporate assets and distributed as dividends. *Hoffmann*, 676 S.W.2d at 827. *See also, Thomas v. Thomas*, 738 S.W.2d 342, 344 (Tex.App.—Houston [1st Dist.] 1987). As retained earnings are a corporate asset, title remains in the corporation; the shareholder does not have legal title. *Id.; See also, Graves v. Graves*, 967 S.W.2d 632, 636 (Mo.App. W.D.1998). Accordingly, the court's treatment of corporate assets as marital property is in error. *See In re Marriage of Ward*, 659 S.W.2d at 607. Moreover, inasmuch as retained earnings are simply one component of book value, establishing the book value of Husband's

marital shares as of the time of division will necessarily reflect any increase in retained earnings. Point granted.

*Point 2: Maintenance Award*

In his next point, Husband argues the trial court erred in awarding Wife $750 per month for statutory, modifiable maintenance. Husband contends the trial court's order was based upon a misapplication of the law. Particularly, Husband argues the trial court abused its discretion in awarding maintenance because Wife testified she was not seeking permanent maintenance, but rather she was only seeking assistance during the remaining term of her business lease. Additionally, Husband contends the brief duration of marriage does not justify the court's award of maintenance.

The trial court has considerable discretion in granting maintenance orders. *L.R.M. v. R.K.M.*, 46 S.W.3d 24, 26 (Mo. App. E.D.2001). Our review on appeal is limited to determining whether the trial court abused its discretion. *Id.* We will not interfere with the trial court's award of maintenance unless the amount of maintenance is clearly unwarranted or is wholly beyond the resources of the spouse ordered to pay. *Brady v. Brady*, 39 S.W.3d 557, 563 (Mo.App. E.D.2001).

Husband first contends that Wife waived her request for maintenance by her testimony that she did not want permanent maintenance, but rather was merely looking for assistance during the remaining

---

**3.** We note that Wife, at oral argument, conceded that that accountant did not consider any adjustments to book value such as appreciation or depreciation of assets.

**4.** We do, however, recognize the teaching of *Hoffmann* that there are circumstances where corporate retained earnings may be treated as marital property. As noted by the court in

*Hoffmann*, whether retained earnings are considered marital property is often determined by evidence of a controlling interest in the corporation by the owner spouse and the owner spouse's substantial control over decisions to distribute corporate earnings. *Hoffmann*, 676 S.W.2d at 827. However, the court made no such findings in this case.

term of her lease. Husband, relying on *In re Marriage of Noeltner*, 569 S.W.2d 8 (Mo.App.1978), contends that Wife's testimony constitutes waiver of maintenance beyond the term of the lease, and thus the trial court's award of maintenance constitutes error. We disagree. This case does not involve an express waiver of maintenance, as was the case in *Noeltner*. Rather, Wife simply testified that she would like help "at least through the end of the lease." We find no waiver of maintenance beyond the term of the lease.

Maintenance may be awarded if the court finds the spouse seeking maintenance (1) lacks sufficient property to provide for his or her reasonable needs; and (2) is unable to support himself or herself through appropriate employment. Section 452.335 RSMo.2000;[5] *L.R.M.*, 46 S.W.3d at 26. Husband's arguments on appeal are not directed at this threshold test.[6]

 Once a court determines that maintenance is appropriate, the court has broad discretion in determining the amount and duration of maintenance. *Schroeder v. Schroeder*, 924 S.W.2d 22, 26–27 (Mo.App. E.D.1996). "There is a judicial preference for awards of unlimited maintenance." *Schroeder*, 924 S.W.2d at 27. Limitation on the duration of maintenance is justified only where substantial evidence exists of an impending change in the financial conditions of the parties. *Id.* There is no such evidence present in this case. A maintenance award should not be based on speculation as to future conditions of the parties. *Smith v. Smith*, 840 S.W.2d 276, 277 (Mo.App. W.D.1992); *See also, Wofford v. Wofford*, 991 S.W.2d 194, 200 (Mo.App. W.D.1999). "Neither an ap-

pellate court [n]or a trial court may speculate on what the future might justify; rather, such a determination should be made in a proceeding for modification of the award upon a showing of changed circumstances." *Whitworth v. Whitworth*, 806 S.W.2d 145, 148 (Mo.App. W.D.1991).

 Husband also contends that the brief duration of marriage does not justify the court's award of maintenance. Section 452.335.2 sets out factors to be considered by court in determining the amount of maintenance. As Husband concedes, there are no Missouri cases holding that the duration of marriage is the controlling factor in setting the amount of maintenance. The duration of the marriage is but one factor of many to be considered. Evidence considered by the court in this case, including the needs of Wife, the resources of both parties, and Husband's conduct during the marriage, supports the award of maintenance to Wife. The court did not abuse its discretion in its award of maintenance. Point denied.

*Point 3: Attorney's Fees*

Finally, Husband argues that the trial court erred in ordering him to pay $25,000 of Wife's attorney's fees. Husband contends there is not substantial evidence to support the award of attorney's fees and, as a consequence, that award should be reversed.

 The trial court has broad discretion in awarding or denying attorney's fees in dissolution proceedings. Section 452.355.1; *Lueckenotte v. Lueckenotte*, 34 S.W.3d 387, 399 (Mo. banc 2001); *Creech v. Creech*, 992 S.W.2d 226, 230 (Mo.App. E.D.

---

**5.** All further statutory references are to RSMo.2000, unless otherwise indicated.

**6.** We are mindful that our disposition of Point 1 may necessarily result in a recalculation of the amount of marital property apportioned

to the parties. However, at oral argument, Husband, with no objection from Wife, invited us to decide the issue of maintenance based on the record before this court.

1999). The trial court is an expert on the issue of attorney's fees, *In re Marriage of Kovach,* 873 S.W.2d 604, 608 (Mo.App. E.D.1993), and its ruling on distribution of attorney's fees is presumptively correct. *Creech,* 992 S.W.2d at 230. The award will be disturbed on appeal only upon a showing that the trial court abused its discretion. *Silcox v. Silcox,* 6 S.W.3d 899, 904 (Mo. banc 1999); *Creech,* 992 S.W.2d at 230. "To demonstrate an abuse of discretion, the complaining party must show the trial court's decision was against the logic of the circumstances and so arbitrary and unreasonable as to shock one's sense of justice." *Lueckenotte,* 34 S.W.3d at 399.

Section 452.355 authorizes a trial court to award attorney's fees after considering all relevant factors. Section 452.355.1; *Kovach,* 873 S.W.2d at 608. A party's financial status is but one factor for the court to consider in determining whether to award attorney's fees; other relevant factors include conduct during the marriage and a spouse's conduct during the litigation which unfairly increases the other spouse's attorney's fees. *Id; Calhoun v. Calhoun,* 934 S.W.2d 14, 15 (Mo. App. E.D.1996). How these factors will balance will vary from case to case. *Halupa v. Halupa,* 943 S.W.2d 272, 278–9 (Mo. App. E.D.1997). Here the trial court stated it based its award of attorney's fees on all the relevant factors listed in section 452.355, with particular consideration of the conduct of Husband during the litigation that complicated and greatly prolonged the course of litigation. Husband has failed to show how the court abused its discretion in so ruling. The court also found that Husband was guilty of misconduct during the marriage, that Husband was abusive to Wife, controlling, secretive about money, and indifferent to Wife's needs. The court found that Husband's misconduct ultimately led to the breakdown of the marriage. Our review of the record shows that there is substantial evidence to support these findings. Wife's attorney's fees totaled $32,713. Given these circumstances, the trial court did not abuse its discretion in awarding Wife $25,000 in attorney's fees. Point denied.

The judgment is affirmed in part and reversed and remanded in part.

SHERRI B. SULLIVAN, P.J., and LAWRENCE G. CRAHAN, J., concur.