John L. SPROCK, Appellant,

v.

Kristin V. SPROCK, Respondent.

No. WD 48473.

Missouri Court of Appeals,
Western District.

June 14, 1994.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Aug. 2, 1994.

Application to Transfer Denied
Sept. 20, 1994.

James W. Gallaher, Jefferson City, for appellant.

Gary Oxenhandler, Columbia, for respondent.

Before LOWENSTEIN, P.J., and BERREY and SPINDEN, JJ.

BERREY, Judge.

Appellant, John L. Sprock, and Respondent, Kristin V. Sprock, were married on June 1, 1991. On August 13, 1992, the parties separated. On August 19, 1993, the Circuit Court of Callaway County entered an order dissolving the marriage and decided the issues of property classification and distribution. Mr. Sprock appeals the trial court's classification and distribution of property.

Mr. Sprock is a farmer. Before the marriage he owned an 841 acre farm in Callaway County. Mrs. Sprock lived and worked in Marshall, Missouri. She sold her home and quit her job shortly before marrying Mr. Sprock. The Sprocks entered into a prenuptial agreement.

After their marriage, the Sprock's kept their funds separate, but, however, they did maintain a jointly owned checking account. Mrs. Sprock maintained her separate account in her name and Karel Vogelsmeier's. Mr. Sprock had a checking account known as the "Sprock Farms" account. After the marriage, Mrs. Sprock was given the power to write checks on the farm account, but ownership remained with Mr. Sprock.

Shortly after the marriage, the Sprock's entered into a contract to purchase a farm located in Audrain County, Missouri. The purchase price of the farm was $220,800. The Sprock's made a $10,000 earnest money deposit. Mrs. Sprock loaned $5000 to Mr. Sprock from her separate funds. Mr. Sprock contributed $5000 from his funds.

The purchase of the Audrain County farm was closed in December, 1991. Mr. Sprock took title to the farm in his name only. He borrowed $144,000 from Farm Credit Services (FCS) to buy the farm. Mr. Sprock signed a note and deed of trust in favor of FCS. Mrs. Sprock also signed the deed of trust, but she did not sign the note. Mrs. Sprock testified that when she signed the deed of trust, she understood that her name was not on the deed to the Audrain County farm.

To purchase the farm, Mr. Sprock borrowed $30,000 of new money from Mrs. Sprock in addition to the $5000 of earnest money she provided. Mr. Sprock gave Mrs. Sprock a $40,000 note in return for the money she provided from her separate funds.[1] Mr. Sprock raised the balance of the purchase price by selling part of his 1991 wheat crop and using an agriculture department set aside payment from his Callaway County farm. The Callaway County farm is listed as Mr. Sprock's premarital asset in the Sprock's prenuptial agreement. The 1991 wheat crop is listed in the prenuptial agreement under the heading "Other", Item 4, "Undetermined Value of 295 acres of wheat crop planted." The prenuptial agreement provides that

---

1. There was some confusion on the parties' part as to whether Mrs. Sprock actually put $35,000 or $40,000 into the transaction.

rents, increase, profits, interest, and dividends on non-marital property shall remain non-marital property.

In July of 1992, Mr. Sprock repaid the $40,000 note in full, with interest. He repaid the note by borrowing $40,000 from his FCS operating line of credit. Mrs. Sprock placed these funds in her separate savings account.

Mr. Sprock made the first principal payment required on the $144,000 FCS note, in April of 1993. He also paid $11,415.20 of interest on the loan. Mr. Sprock raised the FCS payment by liquidating an investment fund. The investment fund was listed in the prenuptial agreement as a premarital asset.

Mr. Sprock raises four points of trial court error. First, he alleges the Audrain County farm should not have been classified as marital property because he acquired the farm in exchange for non-marital assets. Second, in the alternative to Point I, if the Audrain farm is a marital asset, the court failed to make a fair division of the equity in the farm. Third, the crops grown on the Audrain farm were improperly classified as marital property and, finally, the "Sprock Farms" checking account was also improperly classified as marital property.

█ This court will affirm the judgment of the trial court unless there is no substantial evidence to support, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo.banc 1976).

█ In his first point, Mr. Sprock contends the trial court erred in finding that the Audrain farm was a marital asset because he traced the source of the funds used to purchase the farm to non-marital assets.

Section 452.330.3 RSMo Supp.1993 provides:

All property acquired by either spouse subsequent to the marriage and prior to a decree of legal separation or dissolution of marriage is presumed to be marital property regardless of whether title is held individually or by the spouses in some form of coownership such as joint tenancy, tenancy in common, tenancy by the entire-

ty, and community property. The presumption of marital property is over- come by a showing that the property was acquired by a method listed in subsection 2 of this section.

Two of the methods to overcome the presumption of martial property are listed in § 452.330.2 RSMo Supp.1993 and include:

.        .        .        .        .

(2) Property acquired in exchange for property acquired prior to the marriage or in exchange for property acquired by gift, bequest, devise, or descent;

.        .        .        .        .

(4) Property excluded by valid written agreement of the parties;

.        .        .        .        .

Mr. Sprock contends he overcame the statutory presumption by tracing the source of the funds used to purchase the Audrain County farm to assets owned by him prior to his marriage and excluded by the parties' prenuptial agreement.

To overcome the statutory presumption, the party claiming the property is non-marital must prove that it is non-marital with clear and convincing evidence. *Coughlin v. Coughlin*, 823 S.W.2d 73, 75 (Mo.App.1991). In this case, Mr. Sprock has the burden of proof to show the property is non-marital by tracing the money used to pay for the Audrain County farm to specific non-marital assets.

█ Prior to the parties' marriage, they entered into a prenuptial agreement which stated, in part:

It is agreed that neither party shall upon or subsequent to said marriage acquire any interest, right, or claim in or to the property, real or personal, of which the other is now seized, possessed, or entitled to, or of which the other may become seized, possessed, or entitled to hereafter, with the exception, however, of any transfer which the parties hereto may at some time in the future make to themselves, jointly, as tenants by the entirety.

With this language, Mr. and Mrs. Sprock agreed that the property they each owned

and the property they may own in the future would be their own separate property. Prenuptial agreements will be upheld and will dispose of issues of property division unless found to be unconscionable. *Nedblake v. Nedblake,* 682 S.W.2d 852, 854 (Mo.App. 1984).

■ The contract to purchase the farm required an earnest money deposit of $10,000. Mrs. Sprock loaned $5,000 of the earnest money from her separate money and Mr. Sprock contributed $5,000 from his separate funds. Mr. Sprock raised the balance of the money necessary to close the transaction by borrowing an additional $30,000 from Mrs. Sprock, by borrowing $144,000 from FCS, and raising $39,318 by selling part of his 1991 wheat crop and using the "set aside" payment from his Callaway County farm. Mr. Sprock's 1991 wheat crop was listed in the prenuptial agreement as property owned by Mr. Sprock prior to marriage. Mr. Sprock earned the "set aside" payment because he placed part of his Callaway County farm in a government program. The Callaway County farm is listed in the prenuptial agreement as property owned by Mr. Sprock prior to marriage. The prenuptial agreement also provides that profits from premarital property are the parties non-marital property.

When the transaction was closed, Mr. Sprock alone took title to the farm. Mrs. Sprock knew, prior to closing, that Mr. Sprock was going to buy the farm in his name alone. In July 1992, Mr. Sprock paid Mrs. Sprock's $40,000 note in full, plus interest.

Mr. Sprock made the first principal and interest payment required on the $144,000 FCS note, in April, 1993. He raised the funds for the payment by liquidating his Fidelity Investment Fund. According to the prenuptial agreement, the Fidelity Investment Fund was to remain Mr. Sprock's separate property.

It is clear that Mrs. Sprock was attempting to maintain the separate identity of the funds she advanced towards the purchase of the Audrain County farm. As indicated by her testimony, she did not intend for the $40,000 note to become marital property, but to remain her separate property. Likewise,

Mr. Sprock intended to purchase the Audrain County farm as his separate property. It is evident, that if the parties intended for the Audrain County farm to be a marital asset, they would not have exchanged a $40,000 note, to keep the funds used to purchase the farm separate.

■ Mr. Sprock overcame the statutory presumption, that property acquired during marriage is marital property, by tracing the source of funds used to purchase the farm. Property acquired in exchange for property acquired before marriage is not marital property. *Ker v. Ker,* 776 S.W.2d 873, 876 (Mo. App.1989). The evidence is clear that the farm was acquired in exchange for (1) property acquired prior to the marriage, and (2) property excluded by the parties' prenuptial agreement. § 452.330.2 RSMo Supp.1993. None of the money representing the equity in the Audrain County farm came from any source other than Mr. Sprock's non-marital property. We are not convinced that because Mrs. Sprock loaned her separate funds to Mr. Sprock, in exchange for a promissory note, the farm was converted to marital property. It would be unjust to classify the Audrain County farm as marital property because Mrs. Sprock loaned her separate funds to purchase the farm, and, at the same time, classify the funds she acquired, when Mr. Sprock repaid the $40,000 note, as separate property.

We find that the Audrain County farm is non-marital property. Point I is sustained.

As Point II is in the alternative to Point I, we do not address it.

In Point III, Mr. Sprock alleges the trial court erred in finding the crops grown on the Audrain County farm were marital property. During the parties' marriage, the crops grown on the Audrain County farm had a net value of $23,995. The trial court awarded one half of that amount, or $11,997.50, to Mrs. Sprock. Mr. Sprock contends that even though the crops were produced during the marriage, they were produced from a non-marital asset and are property excluded by the prenuptial agreement. The prenuptial agreement provides that income produced by

non-marital assets shall remain non-marital property.

In Missouri, the general rule is that income earned from non-marital property acquired after marriage is marital property. *In re Marriage of Schatz*, 768 S.W.2d 607, 611 (Mo.App.1989). Income from a farm business is governed by the same rule. *Williams v. Williams*, 716 S.W.2d 13, 15–16 (Mo.App.1986). This general rule is supported by § 452.330.3 RSMo Supp.1993, which creates a presumption that all property acquired by either spouse, subsequent to the marriage, is presumed to be marital property. This presumption may be overcome by the exceptions listed in § 452.330.2 RSMo Supp.1993, one of which is "property excluded by a valid written agreement of the parties." Property that is excluded by a valid agreement renders the property separate by rebutting the presumption that property acquired by either party after marriage is marital property. *Nedblake*, 682 S.W.2d at 855.

> The prenuptial agreement states in part: each party acknowledges that the property listed above as belonging to the other party is non-marital property and that the proceeds of such property, including rents, increase, profits, interest, and dividends thereon, shall be non-marital property.

The prenuptial agreement defined for the parties what property is marital and what property is non-marital. The parties chose to define non-marital property as the property owned by each at the date of their marriage and that property acquired by either party after their marriage, except that property they acquired "jointly, as tenants by the entirety." The parties also provided that profits and dividends from non-marital property would be non-marital.

In Point I we determined that the Audrain County farm is Mr. Sprock's separate non-marital property. As such, the prenuptial agreement provides that the "proceeds of such property, ... shall be non-marital property." We find that crops grown on the Audrain County farm are proceeds of the farm and are Mr. Sprock's non-marital property. Point III is sustained.

In Point IV, Mr. Sprock alleges the trial court erred in finding the "Sprock Farms" checking account to be marital property and in awarding Mrs. Sprock one half of the balance in the account, or $2,694. Mr. Sprock points out that he acquired the checking account prior to the marriage and that the account is excluded by terms of the prenuptial agreement.

Mr. Sprock opened the farm account prior to the parties' marriage. Mr. Sprock testified that Mrs. Sprock was not made an owner of the account, but that she was authorized after the marriage to write checks on the account to pay for farm expenditures.

Generally, "property acquired before the marriage and titled in the purchaser's name alone is separate property." *Boyce v. Boyce*, 694 S.W.2d 288, 290 (Mo.App.1985). The general rule applies unless the record shows a spouse's intent to change the status of the property from separate to marital. *Id.*

In the instant case, the signature card for the "Sprock Farms" account lists Mr. Sprock as the account owner. The card listed Mr. Sprock's son, Bryan L. Sprock, as the "TRUST OR PAY ON DEATH BENEFICIARIES." The mere fact that Mrs. Sprock was listed on the signature card as having the power to write checks on the account is not sufficient evidence of an intent by Mr. Sprock to change the farm account from separate to marital property. If the parties had intended for the account to be marital property, it seems likely Mrs. Sprock's name would have been listed as account owner.

The "Sprock Farms" checking account was specifically mentioned in the parties' prenuptial agreement as being Mr. Sprock's non-marital property. Mrs. Sprock argues that since both marital and non-marital funds were deposited into the "Sprock Farms" checking account, the account is a marital asset. She claims the account contains money earned from the sale of crops from the Audrain County farm and therefore contains commingled funds.

In Point I, we held that the Audrain County farm is a non-marital asset. In Point III, we held that the crops grown on the Audrain

County farm are also non-marital property. Therefore, the receipts from the sale of crops grown on Audrain County farm deposited into the "Sprock Farms" account does not create a commingling of marital and non-marital property. Mrs. Sprock failed to prove that marital assets were deposited into the account. The "Sprock Farms" account is non-marital property. Point IV is sustained.

We reverse the judgment of the trial court that the (1) Audrain County farm, (2) crops grown on the Audrain County farm, and (3) "Sprock Farms" checking account were marital property and remand to the trial court for it to enter a judgment consistent with this opinion.

All concur.