Kathleen SHORT,
Petitioner/Appellant/Cross–Respondent,

v.

Howard N. SHORT,
Respondent/Respondent/Cross–Appellant.

No. ED 95663.

Missouri Court of Appeals,
Eastern District,
Division Three.

Oct. 25, 2011.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 12, 2011.

Application for Transfer
Denied Jan. 31, 2012.

Samuel J. Hais, Amarilis L. Dennis, Clayton, MO, For Petitioner/Appellant/Cross–Respondent.

Jerome F. Raskas, Peter H. Love, St. Louis, MO, For Respondent/Respondent/Cross–Appellant.

SHERRI B. SULLIVAN, J.

*Introduction*

Kathleen Short (Wife) appeals from the trial court's May 21, 2010 Judgment (original judgment) dissolving her marriage to Howard N. Short (Husband) and its two Amended Judgments entered September 20, 2010 on Wife's and Husband's Motions to Amend Judgment, respectively. Husband cross-appeals from the original judgment and from the trial court's denial of his motion to amend one of the September 20, 2010 Amended Judgments to include an order of interest on his award of marital property. We affirm in part and reverse and remand in part.

*Factual and Procedural Background*

Husband and Wife were married on August 9, 1978. The parties had discussed and eventually signed a prenuptial agreement on August 8, 1978. On January 25, 2008, after thirty years of marriage, the parties separated. The trial court dissolved their marriage on May 21, 2010. In its Judgment of dissolution, the trial court found the prenuptial agreement to be valid and enforceable. The trial court determined and divided the parties' separate and marital property with a balance of 60% of the marital property to Wife and 40% to Husband.

The dissolution proceeding mainly involved the division of assets, as the parties' three children are emancipated. However, the validity and fairness of the prenuptial agreement was put at issue by Husband; its terms and coverage were put at issue by Wife; and the proceedings were further complicated by the length of the marriage and the extent of the parties', particularly Wife's, substantial and varied assets. The parties also disputed the classification and expert valuation of their separate and marital property; whether proceeds from Wife's separate properties were correctly categorized as marital or separate and, if separate, whether such income had been commingled with marital assets in multiple bank accounts over 30 years of marriage; and attorney's fees and interest. Additional facts will be set out as considered necessary later in this opinion.

## Points on Appeal

In her first point, Wife contends the trial court erred in not awarding her separate property to her, because Missouri courts cannot selectively enforce parts of an antenuptial agreement, in that it overlooked paragraphs 4, 5(a), and 5(c) of the ante-nuptial agreement, which sets off to "each party . . . all property . . . now or hereafter acquired by him or her in any manner whatsoever," which was not ambiguous.

In her second point, Wife maintains that the trial court erred in classifying the liquidating distributions ($5,548,328) Wife received from Sieben, Inc. (Sieben) as marital property, because when a spouse owns separate property stock in a dissolving corporation and receives distributions of liquidated assets, those distributions remain the stockholder's separate property, in that after the plan of complete liquidation was adopted, Sieben distributed the remainder of its assets to its shareholders in exchange for and cancellation of all the issued and outstanding shares of the company. Wife claims her stock ownership of Sieben was acquired prior to the marriage and is separate property and since the liquidating distributions were paid in exchange for her stock ownership, the funds she received as liquidating distributions from Sieben are also Wife's separate property.

In her third point, Wife asserts the trial court erred in its acceptance of Husband's estimated $8,000,000 value of Wife's minority stock ownership in Capitol Coal and Coke Company (CCC) because a proper valuation requires an extensive appraisal which was not performed by Husband's expert.

In her fourth point, Wife states the trial court erred in finding that all of the accounts in the name of Wife or her revocable trust have been transmuted by commingling such that they are now marital property because Wife never intended to transmute or commingle her separate property, in that she was able to trace her separate accounts throughout her marriage and never placed Husband's name on any of her accounts.

In her fifth point, Wife declares the trial court erred in not ordering Husband to pay her attorney's fees, because (1) Husband committed marital misconduct in squandering large sums of marital money in risky investments that Wife did not approve; and (2) Husband prolonged the litigation by taking meritless positions.

In her sixth point, Wife avers the trial court erred in not ensuring that the values of the accounts attributed to Wife were reasonably proximate to the date of the amended dissolution judgment.

## Points on Cross–Appeal

In his first point, Husband maintains the trial court erred in holding the prenuptial agreement valid and enforceable because the court erroneously applied the law by failing to consider the circumstances surrounding the execution of the agreement and because the court's ruling is not supported by substantial evidence and is against the weight of the evidence, in that the evidence established the agreement was not entered into freely, fairly, knowingly, understandingly, and in good faith and with full disclosure.

In his second point, Husband argues the trial court erred when it denied his motion to amend the September 20, 2010 Judgment because it erroneously declared the law, in that a dissolution of marriage judgment does not bear interest unless the judgment specifies that it bears interest and the trial court failed to specify the amount of the judgment that shall bear interest.

In his third point, Husband avers that the trial court abused its discretion when it denied Husband's request that it order Wife to pay his attorney's fees because the weight of the evidence was that Wife had twice Husband's income and more than 250 times more separate property than Husband and Wife's conduct in the litigation required the expenditure of otherwise unnecessary attorney's fees.

## Standard of Review

The standard of review in a dissolution case is governed by *Murphy v. Carron*, 536 S.W.2d 30 (Mo.banc 1976). This Court will sustain the trial court's judgment unless it lacks substantial evidentiary support, is against the weight of the evidence, or erroneously declares or applies the law. *Redlinger v. Redlinger*, 111 S.W.3d 413, 414 (Mo.App. E.D.2003). When determining the sufficiency of the evidence, we will accept as true the evidence and inferences from the evidence that are favorable to the trial court's decree and disregard all contrary evidence. *Brennan v. Brennan*, 955 S.W.2d 779, 782 (Mo.App. E.D.1997). We give due regard to the opportunity of the trial court to have judged the credibility of witnesses. *Id.* A trial court is free to believe or disbelieve all, part, or none of the testimony of any witness. *Id.* We exercise the power to set aside a decree or judgment on the ground that it is against the weight of the evidence with caution and a firm belief that the decree or judgment is wrong. *Id.*

Additional standards of review for particular points on appeal are set forth correspondingly.

## Discussion

For organizational purposes, the parties' points on appeal are addressed out of order, grouped according to subject matter, to-wit: (1) prenuptial agreement; (2) property, marital and separate; (3) attorney's fees; and (4) interest.

### I. *Prenuptial Agreement*

#### a. *Validity and Enforceability—Cross Point I*

It is well-settled law that a prenuptial agreement contemplating the dissolution of a parties' marriage is not against public policy and can be valid. *Potts v. Potts,* 303 S.W.3d 177, 187 (Mo. App. W.D.2010). In Missouri, to be valid and enforceable a prenuptial agreement must be entered into freely, fairly, knowingly, understandingly, and in good faith with full disclosure. *Id.* This requirement has been interpreted by the courts to involve a subjective evaluation of the fairness surrounding the execution of the agreement. *Id.* Factors which courts have considered relevant include the parties' access to independent counsel; the amount of time available to revise the agreement; the bargaining positions of each spouse in terms of age, sophistication, education, employment, and experience; and whether their assets were fully disclosed. *Id.* The fairness of the agreement must be determined as of the date of the agreement. *Id.*

In the instant case, the parties entered into the prenuptial agreement on August 8, 1978, the day before the wedding. Husband was a 26–year–old third-year medical student, and Wife was a 26–year–old nurse. Husband had access to independent counsel. Husband says the attorney he contacted to review the agreement was too expensive, asking for a fee of $5,000, and Husband only had access to $3,000. However, Husband produced a list of his assets for the prenuptial agreement which reported he had a net worth of approximately $180,000 to $200,000. Husband also does not explain why he did not

seek out a less-expensive lawyer or seek to borrow funds. Rather, the record indicates that Husband testified in his deposition that he decided he did not need an attorney because he loved Wife and just wanted to marry her.

In terms of the amount of time available to revise the prenuptial agreement, Husband was presented with the actual agreement the day before the wedding. However, the parties did meet to discuss the agreement in detail four days earlier, on August 4, 1978. Therefore, Husband had four days to review the agreement, as well as access to independent counsel to review it for him. However, at the August 4 meeting, Husband stated that he did not need a lawyer because he was not marrying Wife for her money.

The bargaining positions of Husband and Wife in terms of age, sophistication, education, employment, and experience were relatively equal. As set forth above, both parties were similar in age and well educated at the time of the time of the agreement and both had professional vocations. Husband maintained he had a genius IQ of 160 at the time and there was nothing in the agreement, which he said was straightforward and unambiguous, that he did not understand. Neither Husband nor Wife professed to have any particular business acumen.

Husband claims that Wife's assets as listed in the prenuptial agreement were misrepresented in that their book value was given, as opposed to their fair market value. However, Husband points to no legal authority suggesting listing book value as opposed to fair market value of assets in a prenuptial agreement is misleading or misrepresentational as to their worth, thus rendering the agreement unfair to him or unconscionable.

 Prenuptial agreements will be upheld and will dispose of issues of prop-

erty division unless found to be unconscionable. *Potts*, 303 S.W.3d at 187. An agreement is unconscionable when the inequality is so strong, gross, and manifest that it must be impossible to state it to one with common sense without producing an exclamation at the inequality of it. *Id.* Parties are bound to the provisions of a prenuptial agreement if the agreement was conscionable and fairly made.

Based on the foregoing analysis, we find that the trial court's determination that the prenuptial agreement was conscionable and fairly made is supported by the evidence in the record. At the time Husband and Wife made the agreement, it was entered into freely, fairly, knowingly, understandingly, and in good faith and with full disclosure. Accordingly, Husband's Cross Point I is denied.

### b. *Selective Enforcement—Point I*

Wife maintains that the trial court purported to uphold the entire prenuptial agreement as valid, yet failed to give effect to the plain meaning of paragraphs 4, 5(a), and 5(c) of the agreement. Paragraphs 4, 5(a), and 5(c) provide as follows:

Paragraph 4:

Following their marriage each party hereto shall keep and retain sole ownership, control and enjoyment of all property, real and personal, tangible or intangible, now or hereafter acquired by him or her in any manner whatsoever.

Paragraph 5:

In the event that the marriage between the parties hereto shall hereinafter be dissolved by divorce, and regardless of which party may be granted the divorce from the other, the parties hereby covenant and agree that:

(a): Except as otherwise provided herein, each party shall keep and retain sole ownership, control and enjoy-

ment of all property, real and personal, tangible or intangible, acquired by him or her before or during such marriage.

(b): [Wife] will make no claim against [Husband] for any part of his property or estate.

(c): [Husband] will make no claim against [Wife] for any part of her property or estate.

■ It has been held that a court may not selectively enforce part and reject part of a prenuptial agreement. *Brennan v. Brennan,* 955 S.W.2d 779, 785 (Mo.App. E.D.1997); see also *Kester v. Kester,* 108 S.W.3d 213, 224 (Mo.App. S.D.2003). Such agreements are conscionable, or not, in their entirety, when made by the parties. *Brennan,* 955 S.W.2d at 785.

■ However, the trial court in this case did not find these parts of the agreement to be *unconscionable,* but rather too *vague* and *indefinite* to exclude specific income generated by Wife's separate property from being marital property as set forth in Section 452.330.[1] Wife claims interest and dividend income from their separate property was reserved to the parties as separate property by the terms of the prenuptial agreement set out above. However, the trial court disagreed with Wife's interpretation of the language of the provisions set out above as being specific enough to reserve income such as earnings, interest, and dividends generated by her separate property as her separate property.

■ The general rule is that income generated during the marriage, including income generated by separate property, is marital property. *In re Marriage of Box,* 968 S.W.2d 161, 164–65 (Mo.App. S.D.

1998). Marital property is defined by Section 452.330 as:

[A]ll property acquired by either spouse subsequent to the marriage *except:*

1. Property acquired by gift, bequest, devise, or descent;

2. Property acquired in exchange for property acquired prior to marriage or in exchange for property acquired by gift, bequest, devise, or descent;

3. Property acquired by a spouse after a decree of legal separation;

4. Property excluded by valid written agreement of the parties; and

5. The increase in value of property acquired prior to the marriage or pursuant to subdivisions (1) to (4) of this subsection, unless marital assets including labor, have contributed to such increases and then only to the extent of such contributions.

[Emphasis added.]

Wife contends the fourth exception applies here. However, the trial court stated in its judgment that:

The agreement in this case contains no specific language that excludes the income from Wife's separate assets from its presumptive marital status. The language of the agreement evokes the intent to keep the Capps family businesses in the family. It does not reflect an intent to redefine income acquired during the marriage as separate property in purported alteration of the Missouri statutory definitions of marital and separate property.

Wife maintains this conclusion is wrong, because paragraphs 4, 5(a), and 5(c) in fact do clearly articulate an intent to choose an alternative regime to Missouri's statutory definitions of marital and separate property, including protecting Wife's income from

1. All statutory references are to RSMo 2006, unless otherwise indicated.

her separate property, which is allowed for by Section 452.330.2(4). We disagree. We find the language pointed out by Wife in the prenuptial agreement is too vague and indefinite to specifically cover income from her separate property, which is presumed marital, despite Wife's position to the contrary. The paragraphs emphasized by Wife, regarding property "now or hereafter acquired by him or her in any manner whatsoever" in paragraph 4 and property "acquired by him or her before or during such marriage" in paragraph 5(a), are silent as to income, earnings, dividends or interest, and therefore cannot exempt those types of income received during marriage from their presumed status as marital property. *McGilley v. McGilley*, 951 S.W.2d 632, 637 (Mo.App. W.D.1997). Compare, for example, *Sprock v. Sprock*, 882 S.W.2d 183, 187 (Mo.App. W.D.1994), where the prenuptial agreement stated in part: "each party acknowledges that the property listed above as belonging to the other party is non-marital property and *that the proceeds of such property, including rents, increase, profits, interest, and dividends thereon, shall be non-marital property.*" [Emphasis added.] The *Sprock* court found that the prenuptial agreement specifically set forth and defined for the parties what property is marital and what property is non-marital. *Id.* Such is not the case here.

▬▬▬ A prenuptial agreement can be held sufficiently comprehensive in scope and detail to avoid being held totally unenforceable, with the trial court at the same time rejecting a party's interpretation of some of its provisions. See *McGilley*, 951 S.W.2d at 638. There was no finding of unconscionability made by the trial court in this case. In dealing with the issue of whether portions of the agreement are so vague as to be unenforceable, the court must apply ordinary contract principles.

*Id.* at 637. The cardinal rule in the interpretation of a contract is to determine the intention of the parties and to give effect to that intention. *In re Marriage of Thompson*, 27 S.W.3d 502, 506 (Mo.App. S.D.2000). Here, the trial court did just that when it found that the "agreement in this case contains no specific language that excludes the income from Wife's separate assets from its presumptive marital status" and that the "language of the agreement evokes the intent to keep the Capps family businesses in the family ... not an intent to redefine income acquired during the marriage as separate property in purported alteration of the Missouri statutory definitions of marital and separate property." We agree with this finding.

Based on the foregoing, Point I is denied.

## II. *Property*

### a. *Classification of Separate Property as Marital Property—Point II*

▬▬▬ The classification of property as marital or non-marital is a question of law we review *de novo*. *In re Marriage of Hayes*, 288 S.W.3d 823, 827 (Mo.App. S.D. 2009).

▬▬▬ At the time of the marriage, Wife owned a 3% interest in Sieben, which was valued at that time as worth approximately $136,000. This interest was undisputedly Wife's separate property, by virtue of both Section 452.330.2 and the parties' prenuptial agreement. The record in this case reveals numerous regular cash dividends paid out yearly by Sieben over the course of the marriage until Sieben's dissolution. In 1999, at the time of Sieben's dissolution and liquidation, Wife's interest was worth over $5 million. In June of 1999, and in January of 2000, Wife received two liquidating distributions totaling approximately $5.2 million in exchange for and in cancel-

lation of her stock interest in Sieben, now a liquidated and dissolved corporation no longer in existence. Wife deposited these distributions in her separate accounts and the parties classified them as capital gains, not dividends, for income tax purposes.

Wife argues that these liquidating distributions remained her separate property, characterizing the distributed monies as the distributions representing appreciation in value of her separate interest in Sieben as a closely held corporation under Section 452.330.2(5).[2] Wife maintains that the liquidating distributions of Sieben's remaining assets were in exchange for and cancellation of her stock ownership in the company. The trial court classified these liquidating distributions as marital property in their entirety, reasoning that Wife presented no evidence to establish that the substantial increase in the value of her interest in Sieben over the course of the marriage was a result of anything other than the accumulation of earnings by a successful business.

 Evidence presented at trial showed that approximately 97% of Sieben's assets at the time of Sieben's liquidation were comprised of what is sometimes called "retained earnings." Generally, retained earnings of a corporation do not constitute marital property. *Hoffmann v. Hoffmann,* 676 S.W.2d 817, 827 (Mo.banc 1984); *Craig–Garner v. Garner,* 77 S.W.3d 34, 38 (Mo.App. E.D. 2002). Retained earnings and profits of a corporation are a corporate asset and remain the corporation's property *until severed from other corporate assets and distributed as dividends. Hoffmann,* 676 S.W.2d at 827 [emphasis added]; *Craig–Garner,* 77 S.W.3d at 38. Here,

the 97% "retained earnings" of Sieben were never *severed from other assets* and distributed as dividends. Rather, they *comprised the corporation's assets* that were liquidated upon the corporation's dissolution and distributed to the shareholders as liquidating distributions in exchange for and in cancellation of the outstanding shares. A liquidating distribution includes a transfer of money by a corporation to its shareholders in liquidation of all or a portion of its assets. See Black's Law Dictionary 508 (8th ed.2004). Amounts received by a shareholder in a distribution in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock. 26 U.S.C. § 331(a) (2002).

There is a difference between retained earnings severed from an existing corporation's "other" assets and distributed to shareholders as cash dividends, and retained earnings which make up 97% of a dissolved corporation's assets which are liquidated and distributed to shareholders in exchange for those shareholders' percentage of interest in the defunct corporation. Although this appears to be an issue of first impression in Missouri, Texas has addressed this very issue. In *Legrand–Brock v. Brock,* 246 S.W.3d 318, 321 (Tex.App.Beaumont 2008), the husband, who owned certain corporation stock as his separate property, received liquidating distributions pursuant to the dissolution of the corporation, and the trial court determined that the distributions were in redemption or cancellation of his separate property stock and remained separate property. The wife's accounting expert argued that the distributions were liquidating dividends paid from retained

---

**2.** Section 452.330.2(5) provides in pertinent part: " 'marital property' means all property acquired by either spouse subsequent to the marriage except ... (5) The increase in value

of property acquired prior to the marriage ... unless marital assets including labor, have contributed to such increases and then only to the extent of such contributions.''

earnings, and should be characterized as community property. The Texas Court of Appeals stated that "Generally, when a spouse owns separate-property stock in a dissolving corporation and receives distributions of liquidated assets, the distributions remain the stockholder's separate property." The Court cited previous cases such as *Fuhrman v. Fuhrman*, 302 S.W.2d 205, 212 (Tex.Civ.App.El Paso 1957) (holding that stock received in liquidation of a corporation in which husband owned separate stock was husband's separate property); *Wells v. Hiskett*, 288 S.W.2d 257, 265 (Tex.Civ.App.Texarkana 1956) (holding that because stockholder received a liquidating distribution in the form of an oil and gas lease in consideration of the cancellation of the stock held in a dissolving corporation, the lease remained stockholders' separate property as a matter of law). The Court stated that "[d]istributions received in exchange for the cancellation of stock upon the corporation's dissolution retain the character of the stock." *LeGrand–Brock*, 246 S.W.3d at 321; see also *Wells*, 288 S.W.2d at 265.

 Husband maintains that Texas follows the "inception of title rule" and Missouri follows the "source of funds rule" when it comes to classifying separate and marital property. The source of funds rule states that property is marital to the extent that the source of funds used to acquire it is marital. See *Thomas v. Thomas*, 196 S.W.3d 57, 62 (Mo.App. W.D. 2005). Here, the source of funds for Wife's liquidating distributions from Sieben was her stock interest in Sieben, which was indisputably separate property. However, Husband argues that the majority of the distributions came from Sieben's "retained earnings," which if distributed as cash dividends, would be classified marital income. In the present situation though, the parties are not dealing with "income"

generated by separate property which would involve the application of the source of funds rule. The money Wife received as liquidating distributions from the dissolution of Sieben was not income earned by her separate stock; rather, it was liquidated capital distributions received in exchange for, and in cancellation of, her stock interest in Sieben, which was her separate property.

In the instant case, the characterization of 97% of Sieben's assets as "retained earnings" is misleading in terms of the proper characterization of the distributions in this particular case, because upon dissolution, its retained earnings are no longer "retained earnings," because there is no longer a corporation in existence to retain them; and more importantly, the earnings become its assets for liquidation and distribution to outstanding shareholders in exchange for and in cancellation of their ownership interest in the corporation that no longer is in existence. This distribution is not the same as a "cash dividend" that the directors of an ongoing successful corporation decided to parcel out from that corporation's retained earnings.

> A distribution in liquidation of the assets and business of a corporation, which is a return to the stockholder of the value of his stock upon a surrender of his interest in the corporation, is distinguishable from a dividend paid by a going corporation out of current earnings or accumulated surplus when declared by the directors in their discretion, which is in the nature of a recurrent return upon the stock.

*Hellmich v. Hellman*, 276 U.S. 233, 235, 48 S.Ct. 244, 72 L.Ed. 544 (1928). Further, as mentioned previously, the parties classified the 1999 and 2000 distributions as capital gains on their income tax statements, not as cash dividends.

We conclude that the $5.2 million received by Wife upon the dissolution of Sieben was from the liquidation of Sieben's assets, whether those assets were in the form of retained earnings, capital, profits, etc., prior to dissolution. These liquidating distributions were disbursed to Wife in exchange for and cancellation of her separate stock interest in Sieben, now defunct. The distributions from the dissolution and liquidation of Sieben in exchange for her stock interest in Sieben are properly classified as Wife's separate property at the time of their distribution to her.

Based on the foregoing, Point II is granted.

b. *Valuation of Separate Property–Point III*

The trial court is entitled to believe or disbelieve the testimony of the parties or their experts regarding valuation, and this Court defers to the trial court's determination of the credibility of witnesses. *Rodieck v. Rodieck,* 265 S.W.3d 377, 382 (Mo.App. W.D.2008). We defer to the trial court to resolve any conflict in the evidence concerning the value of property. *Schelsky v. Schelsky,* 796 S.W.2d 888, 893 (Mo.App. E.D.1990). We review the trial court's decision only for an abuse of discretion. *Cohn v. Cohn,* 841 S.W.2d 782, 786 (Mo.App. E.D.1992).

Wife's expert appraised the value of her CCC stock at $2,346,700. Husband's expert appraised it at $8,000,000. The trial court rejected Wife's expert and adopted Husband's. Wife claims this was error because Husband's expert did not perform "extensive real estate appraisals," which was required for a proper valuation of the stock because CCC is a closely-held Missouri corporation that owns and operates a number of real estate properties.

Wife's opinion of the stock's worth was based on her accountant's 1999 *estate tax valuation,* which used a 42.5% discount for lack of marketability and minority interest. The trial court found this valuation to be of marginal value in determining the stock's current worth, because of its lack of proximity to the time of trial, and the fact that the large discount used by Wife's accountant was appropriate for estate planning interests but not for determining market value because Wife would sell her interest in the family company to a family member, not a third party. We find no abuse of discretion in such a finding. Husband's expert stated the current value of the stock was $8,000,000, which the trial court accepted because it found he presented evidence in support of that current estimation, using a net operating income analysis which is appropriate for valuing a commercial real estate company, and a conservative 10% capitalization rate. He also testified as to the inappropriateness of the discount Wife's accountant used. We find that the record contains evidence which supports the stock appraisal accepted and adopted by the trial court, and thus find no abuse of discretion. Furthermore, because Wife's analysis was discounted as inappropriate, Husband's expert's valuation was the only contemporaneous valuation of Wife's interest presented at trial. Point III is denied.

c. *Commingling thus Transmutation of Separate Property to Marital Property—*
*Point IV*

In Point IV, Wife claims that the trial court erred in finding that the monies in all of her accounts have been transmuted by commingling such that they are now marital property because Wife never intended to transmute or commingle her separate property, and she was able to trace her separate accounts throughout her marriage and never placed Husband's name on any of her accounts.

█ The trial court noted that Wife's expert accountant only attempted to trace funds on the three accounts into which the Sieben funds went, and that his attempt was futile from the outset because the trial court had found these funds to be marital funds in the first place, as noted in Point II. However, we have determined that these funds were, indeed, separate funds at the time of their distribution to Wife. There is evidence in the record that Wife deposited these funds into three accounts in her name. Wife's expert testified extensively with regard to these three accounts, tracing the Sieben funds from their deposit into them to the time of trial.

Because the trial court summarily dismissed Wife's expert's efforts in tracing the Sieben funds back to their separate origins as futile from the outset because it found the $5.2 million in Sieben distributions to be marital in origin, we must remand this matter to the trial court for a redetermination of the matter in light of our finding that the Sieben funds were Wife's separate property from the outset.

█ The trial court found the funds in the remaining accounts to be hopelessly commingled due to the length of the marriage, the number of accounts, and the level of account activity, and Wife's expert did not present convincing evidence to dispute this finding. Therefore, we find substantial evidence in the record to support the trial court's finding that the remaining accounts contained marital property which was commingled with dividends, income, and earnings from Wife's separate property, which were admittedly not traced by Wife's expert. Accordingly, Point IV is granted in part and denied in part.

d. *Current to Time of Judgment Valuation of Property Awarded to Wife—Point VI*

█ Wife maintains that the trial court did not ensure that the values of the accounts attributed to Wife were reasonably proximate to the date of the amended dissolution judgment. On the contrary, the trial court entered an Amended Judgment on September 20, 2010, in response to Respondent's motion to amend the Judgment of May 21, 2010, granting Respondent's request to update the values of the parties' property and accounts such that they were reasonably proximate to the date of the dissolution judgment. The parties submitted updated balances of the securities and investment accounts in their respective names as of approximately April 30, 2010, which the trial court used in its division of the marital property, 60% to Wife and 40% to Husband, on the amended Attachment A.

Wife complains that in the Amended Judgment of September 20, 2010, the trial court valued Wife's Bank of America Certificate of Deposit ending in 2616 at $43,966, which was the value as of December 29, 2009 and not the value she gave it as of April 30, 2010, which was $0.00. Wife contends that the trial court properly gave Husband credit for the decreased value of his 10428 Limited Partnership account ending in 0112, which was valued at $10,224.80 in the original Judgment of May 21, 2010, but had been cashed out and had a balance of $0.00 by April 30, 2010.

The trial court did not give Husband credit for an account that he "cashed out." Rather, the trial court acknowledged in its September 20, 2010 Amended Judgment in response to Husband's motion to amend that the value of Husband's 10428 Limited Partnership included the value of a Sauer Dazey account held by the Partnership that had also been separately listed on Attachment A, which constituted a double credit, and therefore the Sauer Dazey account should properly be and was removed

from Attachment A as a separate marital asset.

Attachment A to the Amended Judgment lists as Husband's separate marital asset: "The 10428 Limited Partnership Sauer Dazey account ending in 0112 a/o 9/30/09" valued at $0.00, whereas in the original Judgment it was listed as $10,224.80. There is, in accordance with the trial court's statement, a separate listing of "The 10428 Limited Partnership" on Attachment A as Husband's separate marital property listed at $1,086,000. Thus, the record reveals that the trial court subtracted the value of the 10428 Limited Partnership Sauer Dazey account *because it was already accounted for* in the value of the 10428 Limited Partnership, not because Husband depleted the account. As such, we decline to find error in the trial court's failure to subtract $43,966 from Wife's statement of property by reason of her cashing out $43,966 from her Bank of America Certificate of Deposit ending in 2616. Point VI is denied.

### III. *Attorney's Fees*

#### Point v. and Cross Point III

Both Husband and Wife asked the trial court that the other be ordered to pay his or her attorney's fees. The trial court ordered that the parties pay their own attorney's fees. In doing so, the trial court specifically found in its judgment that "[t]his case was extraordinarily contentious at every turn. However, the court cannot reasonably label one party or the other as the greater source of motions and arguments." The court then recognized that the fees and expenses for both parties were substantial, but not unreasonable for either party based on the magnitude of the assets in dispute and the many issues presented in the case. The court concluded that "[b]oth parties have adequate resources from which to pay their attorney['s] fees and litigation expenses" and thus held neither party responsible for any portion of the other's fees and expenses.

We believe the court made proper considerations with regard to the allocation of fees and expenses and its findings are supported by the record. In awarding attorney's fees, the court considers any relevant factors, including the spouses' financial resources and any unreasonable conduct of a spouse during the dissolution proceeding that may have increased the other spouse's attorney's fees and expenses. *Bauer v. Bauer*, 38 S.W.3d 449, 457 (Mo.App. W.D.2001). Furthermore, the trial court is, of course, an expert on the issue of attorney's fees and may independently determine and award such fees as it deems appropriate. *Id.* With respect to such an award, we will not reverse a trial court's decision as to an award of attorney's fees, unless we find that the court abused its discretion. *Id.*

To demonstrate an abuse of discretion, the complaining party must show that the trial court's decision was against the logic of the circumstances and so arbitrary and unreasonable as to shock one's sense of justice. *Bauer*, 38 S.W.3d at 457. Both Wife and Husband have failed to make such a showing, each merely pointing to the other as the one who protracted the underlying litigation needlessly, confirming the trial court's finding that this case has been extraordinarily contentious at every turn. We find nothing in the record to support a finding that the trial court's allocation of fees and expenses was against the logic of the circumstances before it. Accordingly, Wife's Point V and Husband's Point III are denied.

### IV. *Interest*

#### Cross Point II

Section 408.040, titled "Interest on judgments, how regulated—tort cases,

prejudgment interest allowed when, procedure," provides:

1. In all nontort actions, interest shall be allowed on all money due upon any judgment or order of any court from the date judgment is entered by the trial court until satisfaction be made by payment, accord or sale of property; all such judgments and orders for money upon contracts bearing more than nine percent interest shall bear the same interest borne by such contracts, and all other judgments and orders for money shall bear nine percent per annum until satisfaction made as aforesaid.

Husband maintains that despite this oft-used and well-settled statute's provision of interest on judgments, a dissolution of marriage judgment does not bear interest unless the judgment specifies that it bears interest. Husband cites no authority to support such a proposition, but voices a concern over the dissolution case of *Randall, Boxx & Masri, P.C. v. Norman,* 237 S.W.3d 634 (Mo.App. S.D.2007), in which the Court reversed the trial court's award of interest to the husband and found that no interest accrued on the husband's dissolution award of $28,406.76 in equity from the sale of the marital home. *Id.* at 636. In *Randall,* the award specified that the husband would not receive that award until the occurrence of one of a series of events:

> [Husband] shall receive the amount of $28,406.74 when any one of the following circumstances and/or conditions are met: (1) The minor children [of the marriage] are emancipated; (2) [Wife] remarries; or (3) the marital [home] is sold; (4) [Wife] vacates the subject [home] for at least thirty (30) days with no intention of living in said residence.

*Id.* at 635. In reversing the trial court's award, the Court reasoned thusly:

> The language of the 1999 Dissolution is clear: it states that [Husband] is to be awarded the amount of $28,406.74 as equity in the marital home, and that [Husband] 'shall receive the amount of $28,406.74 when ... the marital [home] is sold....' **The 1999 Dissolution contains no language granting interest to [Husband] on this amount before the occurrence of that event.** [Husband] did not appeal the trial court's failure to award interest in the 1999 Dissolution. Thus, as a final, unappealed judgment, the 1999 Dissolution was not open to impeachment, contradiction, or modification in the interpleader proceeding below, and therefore remains valid and enforceable as written.

*Id.* at 636 [emphasis added].

In the instant case, Husband does not complain that the trial court failed to award him interest on an amount in equity to which he is not entitled until the sale of that equity. Therefore, *Randall*'s holding is irrelevant to the instant case. The judgment below is very clear on its adjudged division and allocation of the parties' separate and marital property from the parties' marital estate. Husband moved the trial court to include an express award of interest in its Judgment and the trial court declined to do so as unnecessary because Section 408.040 provides for the award of interest in this case. We find no error in this determination. Accordingly, Husband's Point II is denied.

## Conclusion

The trial court's judgment is affirmed in part and reversed and remanded in part. The trial court is directed to reconsider Wife's expert's testimony regarding his tracing of the $5.2 million Sieben distributions made into Wife's three accounts as separate property from the outset. After reconsideration of such testimony and evi-

dence, the trial court is instructed to reconsider its distribution of the marital property to the parties in light of its findings and make a redistribution, if necessary.[3]

ROBERT G. DOWD, JR., P.J., and MARY K. HOFF, J., concur.

**3.** Wife's Motion to Strike Portions of Husband's Brief, Appendix and Supplemental Legal File was taken with the case. The Motion is hereby granted to the extent it asks to strike personal identifying data of Mr. Thomas Capps, including his photograph, driver's license, and vehicle registration. The Motion is otherwise denied, including as to the subpoena and affidavit of service on Mr. Capps and publication authored by Mr. Tony DiMartino.