In the Missouri Court of Appeals
 Eastern District
 DIVISION TWO

WILLIAM J. PENROD, ) No. ED109069
 )
 Petitioner/Respondent , ) Appeal from the Circuit Court of
 ) Cape Girardeau County
v. )
 )
KAREN D. PENROD, ) Honorable Craig D. Brewer
 )
 Respondent/Appellant . ) Filed: May 18, 2021

 Introduction

 Karen D. Penrod (Wife) appeals the judgment of the trial court holding the Antenuptial

Agreement entered into between Wife and William J. Penrod (Husband) is valid. In her first

point on appeal, Wife claims the trial court erred in finding the Antenuptial Agreement valid

because the agreement was both procedurally and substantively unconscionable. In her second

point on appeal, Wife argues the trial court erred in its division of marital assets because it relied

upon the unconscionable Antenuptial Agreement. We affirm.

 Factual and Procedural Background

 Viewed in the light most favorable to the judgment, 1 the evidence at trial showed the

following:

1
 Wife has failed to provide a statement of facts in accordance with our standard of review. See Rule 84.04. “An
appellant must provide the facts in the light most favorable to the verdict, not simply recount appellant’s version of
the facts presented at trial.” Blanks v. Fluor Corp., 450 S.W.3d 308, 324 n.1 (Mo. App. E.D. 2014). Instead, Wife
has presented her testimony as undisputed fact and omitted relevant facts which support the trial court’s judgment.
Nevertheless, we exercise our discretion and review Wife’s claims.

 1
 Prior to their marriage, Husband and Wife had been living together for over a year.

Husband, then in his 60s, was considerably older than Wife, who was in her 40s. While living

together, Husband told Wife of his desire to enter into an antenuptial agreement before they

married. Likewise, Husband told Wife he intended to put his assets into a trust before he was

willing to marry her.

 On May 21, 1997, Husband asked Wife to sign the Antenuptial Agreement his attorney

had drafted. Wife, unable to secure her usual attorney, met with attorney Thomas Ludwig

(Ludwig) at Ludwig’s office. Wife and Ludwig reviewed a copy of the Antenuptial Agreement.

It is undisputed that Wife was not rushed while at Ludwig’s office, was aware she was signing an

antenuptial agreement, and did not ask Ludwig any questions. Wife signed the agreement that

evening. On the same day, Husband placed the majority of his real estate holdings into the

William J. Penrod Revocable Living Trust.

 The Antenuptial Agreement contained numerous relevant provisions. It stated neither

party was entitled to maintenance, support, or alimony from the other. The agreement also stated

 it shall be conclusively presumed that Karen has no claim against any of the assets or
 property indicated generally or specifically upon the ‘Financial Statement’ dated
 2/6/97… nor any substitutions or exchanges of said assets or additions or accretions
 thereto or the proceeds thereof in whatever form and including assets after the marriage
 and held in Bill’s name or in any Trust which he establishes or any other entity
 subsequent thereto and whether any such assets are acquired before or after the marriage
 and regardless of the source of funds used to purchase or acquire said assets.

Under the agreement, any real estate not put in their joint names was not marital property. The

agreement provided that “Karen acknowledges her awareness that Bill has transferred to a trust

the great majority of his real estate holdings of which Karen has only limited financial

benefits...” The Antenuptial Provision also included a formula, which given the length of their

marriage, grants Wife a one-time payment of $50,000 upon dissolution of their marriage.

 2
 Alongside the Antenuptial Agreement, Husband presented Wife with a document labeled

“Personal Financial Statement.” Within this document, Husband listed his net worth, real estate,

cash on hand, securities, and motor vehicles. The three-page document provided specific values

of each of Husband’s assets, including his debt for each property. The document also stated,

“Karen acknowledges her general awareness and familiarity with Bill’s holdings.” Wife signed

each page of the Personal Financial Statement.

 Wife did not provide Husband with a financial statement listing her assets. However, the

Antenuptial Agreement stated, “Bill acknowledges his awareness of Karen’s assets and waives

any financial disclosure, and the same shall remain Karen’s regardless of the current value upon

a dissolution of her marriage to Bill or by his death to dispose of as she desires.”

 Wife and Husband were married at the courthouse in Bollinger County, Missouri on May

22, 1997. During their marriage, the parties acted in accordance with the Antenuptial Agreement

and kept almost all of their property separate. Wife also used her own funds to create three LLCs

and a revocable living trust during their marriage.

 Husband and Wife separated on or about January 10, 2018. A bench trial regarding the

dissolution of their marriage, including the validity of the Antenuptial Agreement, was held on

April 22, 2019, and August 8, 2019. At trial, the court heard testimony from Husband and Wife,

and received numerous exhibits regarding the parties’ real estate and the Antenuptial Agreement.

 Husband testified Wife knew “long before [they] got married” that he sought to enter into

an Antenuptial Agreement. He also testified Wife was aware he was placing his assets into a

trust. Husband discussed in some detail the value of shared property he owned with Wife.

Husband stated Wife put her money into a separate account, bought her own property, and

 3
generally operated independently during their marriage. Husband stated he had not prearranged

an attorney for Wife and she brought the Antenuptial Agreement to the lawyer she chose.

 Wife’s testimony complained of her lack of knowledge regarding the agreement and her

lack of adequate counsel. When requested, Wife refused to waive her attorney-client privilege

with Ludwig so he could testify as to the counsel he provided to her.

 The trial court issued its Judgment Dissolving Marriage on February 24, 2020. In the

judgment, the court found Husband made a full disclosure of his assets to Wife on May 21, 1997.

The court expressed skepticism of Wife’s claim that she had not read the Antenuptial Agreement

until 2018. The court found Wife’s testimony to hold little credibility and questioned how she

remembered specific details that were favorable to her, but had no idea as to the document’s

terms. Accordingly, the court found the Antenuptial Agreement to be enforceable. The court also

held the property in Husband’s trust to be separate, nonmarital property. Finally, the court evenly

divided any marital property not subject to the Antenuptial Agreement.

 This appeal follows.

 Points Relied On

 Wife raises two related points on appeal. Point I claims the trial court erred in finding the

Antenuptial Agreement to be valid because the agreement was both procedurally and

substantively unconscionable. Wife contends the agreement was procedurally unconscionable

because there was not full disclosure by both parties, Wife had insufficient time to review the

agreement, and Wife was unable to secure effective counsel. Wife contends the agreement was

substantively unconscionable because she was granted a one-time payment of $50,000 in lieu of

the rights she would otherwise be afforded upon dissolution of their marriage. Similarly, Point II

 4
claims the trial court erred in its division of their marital assets because it relied upon an

unconscionable Antenuptial Agreement.

 Standard of Review

 The standard of review in dissolution cases is governed by Murphy v. Carron, 536

S.W.2d 30 (Mo. banc 1976). See Short v. Short, 356 S.W.3d 235, 240 (Mo. App. E.D. 2011).

“[T]he decree or judgment of the trial court will be sustained by the appellate court unless there

is no substantial evidence to support it, unless it is against the weight of the evidence, unless it

erroneously declares the law, or unless it erroneously applies the law.” Murphy, 536 S.W.2d at

32.

 The party challenging the trial court’s judgment in a dissolution of marriage bears the

burden of demonstrating error. Fike v. Fike, 509 S.W.3d 787, 793 (Mo. App. E.D. 2016). We

view the evidence and inferences in the light most favorable to the judgment and disregard

contrary evidence and inferences. Id. We presume the trial court considered all evidence and

“believed such testimony and evidence that is consistent with its judgment.” Potts v. Potts, 303

S.W.3d 177, 184 (Mo. App. W.D. 2010) (internal quotation marks and citations omitted). We

defer to the trial court’s ability to judge witness credibility, recognizing the trial court is free to

believe or disbelieve all, part, or none of the testimony of any witness. Short, 356 S.W.3d at 240.

“We exercise the power to set aside a decree or judgment on the ground that it is against the

weight of the evidence with caution and a firm belief that the decree or judgment is wrong.” Id.

 Point I

 In her first point on appeal, Wife claims the trial court erred in holding the Antenuptial

Agreement to be valid. Specifically, Wife contends the Antenuptial Agreement was both

procedurally and substantively unconscionable.

 5
 “It is well-settled law that [an antenuptial] agreement contemplating the dissolution of a

parties’ marriage is not against public policy and can be valid.” Id. To be valid and enforceable,

the parties entering into an antenuptial agreement must do so freely, fairly, knowingly,

understandingly, and in good faith with full disclosure. Id. In determining whether the agreement

was entered into fairly, courts conduct a subjective evaluation of the circumstances surrounding

the agreement’s execution. Id. “Factors which courts have considered relevant include the

parties’ access to independent counsel; the amount of time available to revise the agreement; the

bargaining positions of each spouse in terms of age, sophistication, education, employment, and

experience; and whether their assets were fully disclosed.” Id.

 Antenuptial agreements will be upheld unless they are found to be unconscionable. In re

Marriage of Thomas, 199 S.W.3d 847, 852 (Mo. App. S.D. 2006). Conscionability uses the same

standard as in commercial law, meaning protection against one-sidedness, oppression or unfair

surprise. Ferry v. Ferry, 586 S.W.2d 782, 786 (Mo. App. W.D. 1979). “A separation agreement

is unconscionable when the inequality [is] so strong, gross, and manifest that it must be

impossible to state it to one with common sense without producing an exclamation at the

inequality of it.” McMullin v. McMullin, 926 S.W.2d 108, 110 (Mo. App. E.D. 1996) (internal

quotation marks and citations omitted). Furthermore, conscionability includes two different

aspects: procedural and substantive. Procedural unconscionability involves “the contract

formation process, and focuses on high pressure exerted on the parties, fine print of the contract,

misrepresentation, or unequal bargaining position.” Funding Sys. Leasing Corp. v. King Louie

Int’l, Inc., 597 S.W.2d 624, 634 (Mo. App. W.D. 1979). Meanwhile, substantive

unconscionability involves undue harshness in the contract’s terms. Id.

 6
 Procedural Unconscionability

 Wife contends the agreement was procedurally unconscionable because there was not full

disclosure, she had limited time to review the agreement before their wedding, and she was not

adequately informed of the Antenuptial Agreement’s significance by her counsel. We disagree

and address each contention in turn.

 Full Disclosure

 Wife maintains there was a lack of disclosure in two separate manners. First, Wife argues

Husband failed to disclose he was moving a substantial portion of his assets into a trust. Second,

Wife argues she never disclosed any of her assets, in violation of the requirement for full

disclosure.

 Full disclosure “requires both parties to reveal the nature and extent of each other’s

property so that each spouse may make a meaningful decision to waive all or part of those

rights.” McMullin, 926 S.W.2d at 111. However, “[f]ull disclosure does not mean absolute, strict

disclosure” and “does not require the one party know the extent of the other party’s property

down to the very penny.” Darr v. Darr, 950 S.W.2d 867, 870 (Mo. App. E.D. 1997). There can

be no question that Husband fully disclosed all of his assets and their values at the time of the

Antenuptial Agreement’s execution. Likewise, Wife had lived with Husband for some time

before entering into the Antenuptial Agreement and the trial court could have inferred she was

generally aware of his assets. Nonetheless, Wife argues Husband failed to disclose that he was

placing his assets into a trust.

 Wife’s contention is undermined by Husband’s testimony, which we accept as true under

our standard of review. Significantly, Husband testified Wife “knew all about” his trust prior to

their entering into the agreement. The Antenuptial Agreement states Wife “acknowledges her

 7
awareness that [Husband] has transferred to a trust the great majority of his real estate holdings.”

Furthermore, although Husband had moved his assets to a trust, Husband still fully disclosed all

of his assets to Wife in the Personal Financial Statement so she could make an informed

decision.

 Wife also argues she never disclosed any of her assets to Husband before entering into

the agreement. While Wife is correct in her contention that courts have stated “both parties” must

fully disclose their assets, McMullin, 926 S.W.2d at 111, we will not expand our interpretation of

“both parties” to allow the complaining party to argue they have not fully disclosed their assets.

 First, we hold Wife’s assets were properly disclosed. As stated in the Antenuptial

Agreement, Husband waived his right to full disclosure and stated he was aware of Wife’s assets.

Again, because Husband and Wife had been living together for over a year prior to their

marriage, the trial court could have inferred Husband knew of Wife’s assets. Second, we believe

Wife’s argument could lead to perverse results, potentially providing a party incentive to

purposefully withhold disclosing some or all of their assets so they could later invalidate an

antenuptial agreement. Of course, such an outcome is not what the courts had in mind when

stating both parties must fully disclose their assets. “Courts require full disclosure so as to ensure

one party has the ability to make an informed decision about the other party’s financial state

prior to signing away any rights he or she may have in that property.” In re Marriage of Thomas,

199 S.W.3d at 859. Wife has cited no cases to support her argument and our research reveals no

results. Accordingly, we will state what has likely been left unsaid: each party must fully

disclose their assets to the other party, but only the party harmed by the other party’s failure to

fully disclose their assets can complain of inadequate disclosure. A party may not complain of its

own failure to fully disclose its own assets.

 8
 Sufficient Time for Review

 Wife contends that because she first received the Antenuptial Agreement the day before

the wedding, she was not given enough time to properly review and consider the agreement.

Moreover, Wife argues she was unfairly pressured into signing the agreement to avoid facing the

humiliation and inconvenience of postponing their wedding.

 The amount of time a party is given to review an antenuptial agreement goes to the

agreement’s procedural conscionability. Potts, 303 S.W.3d at 189. Wife cites Potts, where,

among other reasons, the Western District found one day’s notice did not provide the wife with

sufficient time to review an agreement. Id. Notably, in Potts, the trial court held the antenuptial

agreement to be unconscionable. Relying on evidence favorable to the trial court’s judgment,

such as testimony that the wife had not seen the revised agreement until 7:00 p.m. on the night of

their wedding rehearsal, the court stated “there was some evidence which could support the

conclusion that the agreement was procedurally unconscionable.” Id. at 188. Accordingly, the

Western District affirmed the agreement’s unconscionability.

 In comparison, Husband cites Short, 356 S.W.3d 235, where this Court held an

agreement presented the day before the wedding was conscionable. In Short, the husband was

first presented with the antenuptial agreement the day before their wedding. Id. at 241. However,

the husband and wife had discussed the agreement four days earlier. Relying on this previous

discussion, alongside the parties’ relatively equal bargaining positions in terms of age,

sophistication, education, employment, and experience, we held the trial court’s determination

that the agreement was conscionable was supported by evidence within the record. Id.

 Like in Short, viewing the evidence in the light most favorable to the trial court’s

judgment, Husband and Wife had already thoroughly discussed the Antenuptial Agreement well

 9
before their wedding. Husband testified to this, stating he previously explained the Antenuptial

Agreement to Wife in detail and “she [knew] everything about the document.” Accordingly, we

disregard Wife’s testimony that she hadn’t known of the agreement until the day before the

wedding. The record supports the fact that Wife was offered additional time to review the

document if needed, and the wedding itself could have been easily rescheduled at the courthouse.

Consequently, in light of our standard of review and Husband’s testimony, we find the amount of

time Wife had to review the agreement was not procedurally unconscionable.

 Assistance of Counsel

 Wife also argues she did not have adequate assistance of counsel before signing the

Antenuptial Agreement. Wife claims Ludwig was not truly independent, never billed her, did not

explain the significance of the agreement’s terms, and only spent ten to fifteen minutes with her.

In sum, Wife claims she did not have adequate, independent counsel and therefore this Court

must hold the Antenuptial Agreement to be procedurally unconscionable. We disagree.

 First, substantial evidence was presented showing Wife received adequate, independent

counsel. Husband testified neither he nor his attorney prearranged Wife’s appointment with

Ludwig. The Antenuptial Agreement also states Wife had the benefit of Ludwig’s counsel in

deciding whether to enter into the agreement. Further, Wife testified Ludwig did not rush her out

of his office and she had no additional questions for him.

 Likewise, the trial court was not required to adopt Wife’s facts as the basis for its

decision and was free to disbelieve some or all of Wife’s testimony. See J.A.D. v. F.J.D., 978

S.W.2d 336, 340 (Mo. banc 1998); In Re Marriage of Lewis, 808 S.W.2d 919, 921 (Mo. App.

S.D. 1991). The court’s skepticism of Wife’s testimony became apparent when the court

questioned why Wife had such a clear memory regarding details beneficial to her, such as not

 10
being consulted on specific terms in the agreement, while she also claimed she had little to no

recollection of the agreement’s existence and meaning.

 Wife claimed her meeting with Ludwig was short and uninformative. She also claimed

she never received a bill from Ludwig. However, Wife declined to waive her attorney-client

privilege to allow Ludwig to testify. Accordingly, the trial court could have inferred Ludwig’s

testimony would not support Wife’s testimony.

 In light of our standard of review and the record before us, we find: (1) Husband

provided full disclosure of his assets; (2) Wife was given sufficient notice of the agreement; and

(3) Wife had adequate, independent counsel. We hold the Antenuptial Agreement was not

procedurally unconscionable.

 Substantive Unconscionability

 Wife also claims the agreement was substantively unconscionable because she was

granted a one-time payment of $50,000 in lieu of other rights she might be entitled to upon

dissolution of their marriage. We disagree.

 Antenuptial agreements have been found to be unconscionable when “the agreement

attempts to totally take from one of the spouses his or her presumed right to marital property.”

Miles v. Werle, 977 S.W.2d 297, 303 (Mo. App. W.D. 1998). However, “[w]here a spouse

retains at least a share of marital property in the antenuptial agreement, the agreement is likely

enforceable.” King v. King, 66 S.W.3d 28, 36 (Mo. App. W.D. 2001). For example, in Miles, the

antenuptial agreement was found to be substantively conscionable when the agreement preserved

each party’s rights to the accrual of marital property and “basically provided only that what each

spouse brought into the marriage as separate property would remain their own separate

property.” 977 S.W.2d at 303. In contrast, in McMullin we held an antenuptial agreement to be

 11
substantively unconscionable when it attempted to have the wife waive all her interests in marital

property. 926 S.W.2d at 111.

 Like in Miles, the Antenuptial Agreement did not prevent Wife from obtaining marital

assets. Instead, the agreement called for the even distribution of marital property. Similar to the

Western District’s holding in King, because of the even distribution of marital property, we find

the Antenuptial Agreement to be substantively conscionable although it provides the separate

property of Husband and Wife remain separate, resulting in a disparity between the property set

aside to each spouse. King, 66 S.W.3d at 36. Moreover, both parties were aware of the terms of

the Antenuptial Agreement and kept almost all of their property separate during their marriage,

including Wife who created her own trust and three separate LLCs pursuant to the agreement.

 Point I is denied.

 Point II

 In her second point on appeal, Wife claims the trial court erred in dividing marital assets

based upon the Antenuptial Agreement. Wife contends their marital assets should have been

divided pursuant to section 452.330 RSMo.

 To the extent Wife is arguing the property covered in the Antenuptial Agreement is

marital and should not have been divided according to the agreement, we disagree. Section

452.330.2(4) states marital property does not include property excluded by valid written

agreement of the parties. As stated above, we have found the Antenuptial Agreement to be

conscionable and valid. Valid antenuptial agreements “dispose of issues of property division.” In

re Marriage of Thomas, 199 S.W.3d at 852.

 Insofar as Wife is challenging the division of the few assets the trial court found to be

marital, her claim has no merit. The trial court followed section 452.330 in its division of their

 12
marital property. Moreover, Wife has failed to explain what marital property was divided

erroneously.

 Point II is denied.

 Conclusion

 The judgment of the trial court is affirmed.

 SHERRI B. SULLIVAN, P.J.

Lisa P. Page, J., and
Thomas C. Clark, II, J., concur.

 13